564

(194 P.3d 593)
No. 97,818

STATE OF KANSAS, *Appellee*, v. WILLIAM SHERROD, *Appellant*.

Opinion filed October 17, 2008.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Amory K. Lovin*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before MALONE, P.J., BUSER, J., and LARSON, S.J.

BUSER, J.: William Sherrod appeals his conviction of attempted aggravated indecent liberties with a child in violation of K.S.A. 21-3301(a) and K.S.A. 21-3504(a)(3)(A). Sherrod contends he was deprived of a fair trial by prosecutorial misconduct. Sherrod also claims there was insufficient evidence to convict him of attempted aggravated indecent liberties with a child because the evidence showed he committed the completed crime. We affirm the conviction.

## Factual and Procedural Background

The State's evidence consisted of testimony by the complaining witness, G.S., and her mother. G.S. was 13 years of age both at the time of the crime and at trial. At the beginning of G.S.'s direct testimony, the prosecutor asked the child if she knew the difference between a truth and a lie, that she was under oath, and that she was obliged to tell the truth. Defense counsel did not object to the questions, and G.S. answered yes to each one.

G.S. then described how on January 31, 2004, Sherrod and his wife, Kelly Sherrod, hosted a party at the Sherrods' home. The family of G.S. attended the event. After the party, G.S. spent the night at the Sherrods' home. G.S. slept in the living room on a bed that was converted from a couch.

Shortly after G.S. awoke the next morning, Sherrod came into the living room and laid down on the bed, apparently to sleep. G.S. testified that Sherrod then began rubbing her back on the outside of her shirt. The prosecutor asked G.S. how it made her feel, and she replied, "Uncomfortable" but not "worried." There was no objection to the question.

The prosecutor later asked, "And then what did he do?" The transcript shows G.S. made no audible response. The following exchange then occurred:

"Q. Do you want to be here today, [G.S.]?
"A. No.
"Q. Okay. But you understand your duty to tell the truth, right?"

Sherrod's counsel objected, but G.S. replied, "Yes." Out of the jury's hearing, Sherrod's counsel argued the question was leading and that "to suggest that she has a duty to be there I think is unfairly prejudicial." The district court replied, "Well, in terms of duty to be here it was couched in terms of duty to tell the truth." The district court did not specifically rule on the objection, and there was no further response by G.S. to the question.

G.S. testified that Sherrod next reached under her shirt to rub her back and then he rubbed her legs. She described how Sherrod told her that "I couldn't tell anybody what he was doing and I couldn't even tell my best friend." When the prosecutor asked G.S.

what she was "thinking at this point," she responded, "I was scared and just wanted to throw up." There was no objection to the question.

Sherrod next began rubbing G.S.'s stomach. While doing so, Sherrod touched the bottom of G.S.'s bra and the outside of her underwear. Under questioning by the prosecutor, G.S. then testified:

"Q. Okay. He was on the outside first, and then what did he do?
"A. He started going on the inside.
"Q. Okay. And when you say he started going, what part of his body?
"A. His hand.
"Q. Okay. His hand? And it was going where?
"A. On the inside of my underwear.
"Q. Okay. On the inside of your underwear? Okay. And how far did his hand go inside of your underwear?
"A. Not very far.
"Q. Okay. Did his hand go between your legs?
"A. No.
"Q. Okay. Did it go further than just the inside band of your underwear?
"A. A little bit.
"Q. Okay. Um, did it go down to where you use the restroom at?
"A. No.
"Q. Okay. Did it go halfway down to that area?
"A. Yeah.
"Q. Okay. And I have to ask you some questions about your body. You're 13 years old, correct?
"A. Yes.
"Q. Okay. Are you developed enough where you do have pubic hair in your genital area?
"A. Yes.
"Q. Okay. Did his hands go that far?
"A. Yes.
"Q. Okay. And what did you say to him?
"A. I told him to stop.
"Q. Okay. And what happened?
"A. He did."

Afterwards, Sherrod told G.S. that he hoped they could still be friends and "he wouldn't do it again unless I wanted him to." The prosecutor asked G.S. how that made her feel, and she replied, "Angry." G.S. said Sherrod "tried to make a joke out of it," won-

dering if he could pay her not to tell anyone about it. The prosecutor asked G.S. how that made her feel, and she replied, "Bad." There were no objections to the questions.

The mother of G.S. testified that upon her daughter's return home later that morning, G.S. began crying hysterically and went to the bathroom. G.S. initially did not respond to her mother's questions asking if anyone had touched her. She ultimately told her mother, however, about the encounter with Sherrod.

A short time later, G.S.'s mother and her boyfriend confronted Sherrod and Kelly about the allegations. According to G.S.'s mother, Sherrod claimed that all he had done was "rub her back." Kelly looked at Sherrod and asked him "why he always thinks he has to rub everybody's back." When G.S.'s mother asked Sherrod why he had told G.S. not to tell anyone, Sherrod "just said he didn't think it was appropriate. Some people might think it would be inappropriate for him to rub other people's backs."

The jury was instructed to find whether Sherrod had performed an overt act towards the commission of aggravated indecent liberties with a child but "failed to complete the commission of the crime." The elements of aggravated indecent liberties with a child were stated as touching or fondling G.S. "in a lewd manner, with intent to arouse or satisfy the sexual desires of either [G.S.] or [Sherrod] or both," and that "at the time of the act [G.S.] was a child under the age of 14." Sherrod did not object to these instructions, request any instructions, or submit proposed instructions. The jury returned a guilty verdict, and Sherrod appeals.

### Prosecutorial Misconduct

Sherrod alleges two kinds of prosecutorial misconduct. First, he claims the prosecutor's questioning of G.S. regarding her understanding of the duties imposed while testifying under oath constituted impermissible bolstering of her credibility. Second, he contends the prosecutor's questions to G.S. about her thoughts or feelings during the encounter with Sherrod were designed to inflame the passions of the jury.

In reviewing a prosecutorial misconduct claim we employ a two-step analysis without regard to the existence of an objection below.

The first step asks whether the "complained-of conduct was outside the considerable latitude given a prosecutor in discussing the evidence." *State v. Albright*, 283 Kan. 418, 428, 153 P.3d 497 (2007). The second step asks "whether the remarks constituted plain error, that is, whether the statements prejudiced the defendant and denied him or her a fair trial." 283 Kan. at 428.

The court considers three factors in determining whether there was plain error: (1) whether the misconduct was gross and flagrant; (2) whether the misconduct demonstrated ill will by the prosecutor; and (3) whether the evidence was of such a direct and overwhelming nature that it would have had little weight in the jurors' minds. No single factor is controlling. The third factor may not override the other two unless the harmless error tests of both K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, *reh. denied* 386 U.S. 987 (1967), have been satisfied. *Albright*, 283 Kan. at 428.

First, with regard to Sherrod's bolstering of credibility claim, a witness must understand the duty to tell the truth. See K.S.A. 60-417. It is appropriate to lay a foundation for a child's understanding of this duty by asking the child questions such as those posed in this case. See *State v. DeLespine*, 201 Kan. 348, 351, 440 P.2d 572 (1968).

Sherrod nevertheless asserts that it is "inconceivable" such questions were necessary. We disagree. Not only was G.S. a 13-year-old complaining witness in a sex abuse case, the trial transcript indicates she testified with difficulty. G.S. was repeatedly asked to speak up, she failed to respond to questioning, and the trial judge once found it necessary to direct her to answer.

It was, therefore, not impermissible for the prosecutor initially to question G.S. about her duties as a witness and then to reexamine her understanding when she did not respond to a question. Although the objected-to question was leading, it was not bolstering. In *State v. Elnicki*, 279 Kan. 47, 60, 105 P.3d 1222 (2005), for example, a prosecutor improperly told a jury, " '[Y]ou know [the victim] was telling you the truth.' " Here, in contrast, the questions all focused on G.S.'s own understanding of her testimonial duties.

Moreover, assuming the questions were improper, there was no plain error. The questions were brief and to the point. The prosecutor did not mention G.S.'s duty to tell the truth in closing arguments, instead telling the jury, "It's your job to determine the credibility of the witnesses." The district court also instructed the jurors "to determine the weight and credit to be given the testimony of each witness." Jurors are presumed to follow the instructions from the court. *State v. Daniels*, 278 Kan. 53, 72, 91 P.3d 1147, *cert. denied* 543 U.S. 982 (2004). We find nothing gross or flagrant here, nor any prosecutorial ill will.

We next address Sherrod's claim that the prosecutor's questions concerning G.S.'s thoughts or feelings were improper. Sherrod argues: "The sole purpose of the State . . . was to make the jur[ors] sympathize with the victim and to inflame their passions against [him]." Sherrod infers this intent from an asserted lack of relevance to the "thoughts and feelings" testimony, a point to which the State had no chance to respond to below because Sherrod never objected to the questions.

On appeal, the State counters the testimony was relevant "to show . . . [G.S.] was not . . . over-reacting to what was just a back rub." Sherrod did not testify at trial, but G.S.'s mother recalled that when she confronted Sherrod after the incident, he claimed, " '[A]ll I did was rub her back.' " Yet, both G.S. and her mother testified to G.S.'s hysterical reaction later in the day.

The testimony regarding G.S.'s contemporaneous thoughts and feelings provided the jury with context to understand the occurrence. It confirmed the escalating nature of the encounter, and it helped to explain G.S.'s reaction to Sherrod's touching. As a result, the evidence had some tendency in reason to prove Sherrod had done more than he claimed when confronted by G.S.'s mother. See K.S.A. 60-401(b) (relevant evidence). Finally, assuming there was prosecutorial misconduct, Sherrod has wholly failed to prove the requisites for plain error.

We find Sherrod's two claims of prosecutorial misconduct are without merit.

## Sufficiency of the Evidence

Sherrod contests the sufficiency of the evidence. He argues that "if the jury believed" the facts as alleged by G.S., those facts "equate to the completed crime of aggravated indecent liberties" with a child. According to Sherrod, therefore, the "State did not prove a critical element of the crime of attempted aggravated indecent liberties, specifically that [he] failed to complete the crime."

Aggravated indecent liberties with a child is defined in relevant part as: "Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, or the offender, or both." K.S.A. 21-3504(a)(3)(A). "An attempt is any overt act towards the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 21-3301. "When the sufficiency of the evidence is reviewed in a criminal case, this court must consider all of the evidence, viewed in a light most favorable to the prosecution, and determine whether [we are convinced] a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006).

We first note Sherrod's concession on appeal that he never raised this particular basis for insufficiency before the district court. If Sherrod believed the State's evidence established the greater crime of aggravated indecent liberties with a child and not the lesser included crime of attempted aggravated indecent liberties with a child, he had numerous opportunities to object below. See K.S.A. 21-3107(2)(b) (an attempt is a lesser included crime). Sherrod did not move to dismiss the charge. See K.S.A. 22-3208(4). He did not defend on this basis at the preliminary hearing. See K.S.A. 22-2902. Sherrod did not object to the attempted aggravated indecent liberties with a child instruction. See K.S.A. 22-3414(3). Finally, he did not seek a new trial on this particular ground. See K.S.A. 22-3501(1).

Sherrod did move for a judgment of acquittal, but only on the basis that the facts alleged by the State to prove the overt act did

not occur. See K.S.A. 22-3419(1). This argument is different from Sherrod's claim on appeal that those facts constituted more than overt acts and, instead, constituted the completed crime. Quite simply, we believe Sherrod has raised a new issue on appeal. As a general rule, issues not raised before the district court may not be raised on appeal. See *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007).

As to the merits, Sherrod does not show error. At oral argument, Sherrod's counsel contended the crime of aggravated indecent liberties with a child was completed when Sherrod first touched G.S.'s legs. In his brief, however, Sherrod relies on G.S.'s testimony that he "rubbed her legs, rubbed her stomach, intentionally brushed up against her bra . . . [and] put his hand down her underwear and touched her pubic hair."

The State counters that

"[d]uring the massage the defendant was careful to not touch her breast area or her buttocks or the inside of her thighs. However, when he started to put his hand inside her underwear it becomes clear what his intent was. In this case the child told him to **stop** when he put his hand in her underwear and he did, which is why the State charged it as Attempted Aggravated Indecent Liberties."

Sherrod essentially invites us to find as a matter of law that the crime was completed at some point before G.S. told him to stop. The aggravated indecent liberties with a child statute, however, does not specify any particular touching which, if committed, establishes a completed crime. In fact, Kansas case law is replete with a variety of indecent touchings perpetrated upon children which resulted in convictions for aggravated indecent liberties with a child. See *State v. Kessler*, 276 Kan. 202, 214-15, 73 P.3d 761 (2003) (touching of penis and buttocks); *State v. Sampsel*, 268 Kan. 264, 267-68, 997 P.2d 664 (2000) (sexual intercourse); *State v. Ippert*, 268 Kan. 254, 255-56, 259-60, 995 P.2d 858 (2000) (touching in vaginal area with finger and penis); *State v. Lewis*, 33 Kan. App. 2d 634, 636-38, 656-57, 111 P.3d 636, *rev. denied* 277 Kan. 924 (2003) (rubbing vaginal area).

Under the facts of this case, the jury could have reasonably viewed the touching of G.S. as an overt act toward the commission of aggravated indecent liberties with a child. In this regard, it is

important to remember: "The jury determines the existence of an overt act. There is no definitive rule concerning what constitutes an overt act; each case depends on the inferences a jury may reasonably draw from the facts." *State v. Zimmerman*, 251 Kan. 54, Syl. ¶ 6, 833 P.2d 925 (1992).

For example, the jury may have considered Sherrod's rubbing of G.S.'s back, legs, and stomach to be "mere preparation made by the accused," which prefaced his actual overt act towards touching G.S.'s genitalia, *i.e.*, reaching below her underwear. *State v. Stevens*, 285 Kan. 307, Syl. ¶ 5, 172 P.3d 570 (2007). Then again, the jury may have considered Sherrod's admission to rubbing G.S.'s back as beyond preparation and constituting an overt act towards touching her genitalia. Regardless, our task in reviewing the sufficiency of the evidence is not to substitute our judgment for that of the jury. See *State v. Henderson*, 284 Kan 267, 297-98, 160 P.3d 776 (2007).

A reasonable factfinder could conclude from Sherrod's escalating actions that he intended more—in particular, to actually touch G.S.'s genitalia. Such a factfinder could also conclude that Sherrod's intent was thwarted when, as the prosecutor told the jury, G.S. summoned "the courage to say stop" and Sherrod complied. Considering the evidence in the light most favorable to the prosecution, we hold a rational factfinder could have found beyond a reasonable doubt that Sherrod was guilty of attempted aggravated indecent liberties with a child.

Affirmed.