(253 P.3d 362)
No. 102,910

STATE OF KANSAS, *Appellee,* v. CARLOS CHAVEZ-AGUILAR,
*Appellant.*

Opinion filed
April 22, 2011.

*Bradley P. Sylvester*, of Wichita, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before HILL, P.J., GREEN, J., and BUKATY, S.J.

Hill, J.: Claiming improper admission of gang affiliation evidence, insufficient evidence, and various jury instruction errors, Carlos Chavez-Aguilar asks us to overturn his convictions for aiding and abetting the killing of two people and the injuring of a third when he rode with his brother who drove a truck through a crowd outside a night club.

Following the usage of the briefs in this case, we refer to Carlos Chavez-Aguilar as Chavez.

*An early morning encounter leads to death and injury.*

Around 1:30 one morning in August 2008, Chavez and his brother, Rene, picked up their friend Rene Mares and drove to the nightclub El Alacran for a drink. Because of the lateness of the hour they were denied admission. A patron of the club asked Mares where he was from. Mares responded that he does not "bang"—meaning he did not claim any gang affiliation. Mares then heard someone, possibly Chavez, say they were from the south side—meaning they were affiliated with a gang called "South side" or the "Surenos." This comment ignited an immediate confrontation and fist fight with nearby rival gang members. At one point 30-40 people were fighting or milling about in a driveway shared by the nightclub and a next-door restaurant. Some of the witnesses referred to the driveway as an alleyway. Rene Mares withdrew from the action to the safety of the restaurant, leaving the fighting to others. He did not leave with Chavez and his brother.

El Alacran employees tried to break up the fight. In fact, following the directions of a supervisor, an El Alacran employee escorted and physically placed Chavez and his brother Rene back into their truck in order to get them to leave. Nevertheless, fighting continued amongst other combatants. Without warning, Rene drove his truck right through the crowd. One El Alacran employee testified that the truck sped through, did not have its brake lights on, and did not slow down but rather accelerated. The El Alacran employee

testified that the passenger of the truck was leaning out the window and yelling something loud and threatening in Spanish. Three people were struck by the truck—two died, with the third seriously injured. Another witness testified that as the truck passed through, and while one victim was being hit, the passenger—who was identified as Chavez—leaned out the truck window and screamed, "[T]his is what you mother fuckers get, this is Sureno town." Other witnesses agreed the passenger was leaning out the window, yelling and cussing. There were about 30 people in the alleyway when the truck went through.

Chavez was found guilty of second-degree murder, involuntary manslaughter, and aggravated battery under an aiding and abetting theory. He is now serving a prison sentence.

First, we examine the use of gang evidence in this case. Next, we review whether the evidence is sufficient to support the convictions. Finally, we consider the four jury instruction errors claimed by Chavez.

*Gang evidence explained why the fight started and offered a possible motive.*

Over the objection of Chavez, the State presented gang evidence to the jury. Chavez even sought a mistrial over this evidence, but his motion was denied by the court. To us, Chavez argues that since he was charged with committing a reckless killing—and gang evidence is most relevant when the crime charged is an intentional killing—the court erred in admitting the evidence and in denying his motion for a mistrial. We are not persuaded by this argument because the gang evidence certainly provided a context to explain the actions of the various people at the scene.

But first, we offer our standard of review. We review the district court's decision permitting gang evidence for an abuse of discretion. See *State v. Ross*, 280 Kan. 878, 886, 127 P.3d 249, *cert. denied* 548 U.S. 912 (2006). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, the trial court did not abuse its discretion. *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006).

Our Supreme Court has dealt with the admission of gang evidence before this. Evidence of gang affiliation may be relevant when it forms a part of the events surrounding the commission of the crime. *State v. Tatum*, 281 Kan. 1098, 1106, 135 P.3d 1088 (2006). Evidence of gang affiliation is also admissible to show a motive for an otherwise inexplicable act. *State v. Lowe*, 276 Kan. 957, 961, 80 P.3d 1156 (2003). To be relevant and admissible, the defendant's gang affiliation must be related to the crime charged. See *State v. Brown*, 285 Kan. 261, 297-98, 173 P.3d 612 (2007). With these holdings in mind, we examine the record of this case.

Here, Chavez' gang affiliation was directly related to the crimes charged and was an essential part of the events surrounding the commission of the crimes. Clearly, the gang affiliations of the combatants explained why the fight began. Thus, it forms a part of the events surrounding these crimes, as mentioned in *Tatum*. Also, this evidence demonstrated a motive for Chavez and his brother to drive through a crowd of people while screaming out their gang affiliation. This is similar to *Lowe* in that it offers an explanation for an otherwise inexplicable act.

This entire crime scene reeks of gang activity. Unquestionably, the confrontation was some sort of territorial dispute between rival gangs. Such evidence explains reckless conduct as well as intentional behavior. The gang evidence was relevant. The district court did not err in admitting this evidence.

We also note the court limited the use of this evidence in Instruction No. 22. This gang affiliation evidence could only be considered by the jury with respect to motive. This is a logical and reasonable restriction on the use of this type of evidence, considering the facts of this case. We find no abuse of discretion here.

The court correctly admitted the evidence. For these same reasons, Chavez' claim that the district court abused its discretion in denying his request for a mistrial—due to the fact that the court permitted the gang evidence—also fails.

*The evidence supports a conviction for aiding and abetting.*

With this issue, Chavez focuses on two of his convictions. He claims there is insufficient evidence to support the second-degree

murder and aggravated battery convictions. In our view, the circumstantial evidence indicating that Chavez helped to create a profound risk to others at this scene and ignored the foreseeable consequences of his actions sufficiently supports his convictions.

On questions of this type our rules are clear. When the sufficiency of the evidence is challenged in a criminal case, an appellate court reviews whether all the evidence, viewed in the light most favorable to the prosecution, convinces the court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Gant*, 288 Kan. 76, 83, 201 P.3d 673 (2009). But in order to consider this properly, we must also consider the charges.

Under Kansas law, one type of second-degree murder is defined as the killing of a human being committed unintentionally, but recklessly, under circumstances manifesting extreme indifference to the value of human life. K.S.A. 21-3402(b). Reckless aggravated battery is defined as "recklessly causing great bodily harm to another person or disfigurement of another person." K.S.A. 21-3414(a)(2)(A). Clearly, both crimes require reckless conduct and not intentional behavior.

Basically, Chavez argues one cannot aid and abet reckless conduct because you can never be sure what another person is thinking or intends. Our Supreme Court has dispelled this notion to the contrary in *State v. Davidson*, 267 Kan. 667, 683-84, 987 P.2d 335 (1999). The Supreme Court found there was sufficient evidence to support the defendant's conviction for reckless second-degree murder despite a lack of evidence the defendant *knew* her conduct would kill someone. Instead, the court held that circumstantial evidence indicating the defendant created a profound risk and ignored the foreseeable consequences of her actions was sufficient to support the conviction. 267 Kan. at 684. Applying that principle here, we see that it is not necessary for the State to prove that Chavez knew the conduct *would* kill someone but know that it *could* kill someone.

A review of the evidence is helpful at this point. It is clear from the record that Chavez and Rene knew what was happening in the driveway/alleyway (*i.e.*, that it was crowded with people engaged

in the fight) when they drove the truck through it. A witness testified that the fight, which had involved Chavez, began in the alleyway, there were about 30 or 40 people in the alleyway, and the truck just came through everyone. As we previously noted, the witness testified that as the truck drove through the crowd of people, and as one victim was being hit, Chavez leaned out the window and screamed, "[T]his is what you mother fuckers get, this is Sureno town." The same witness testified Chavez was communicating with Rene during this time and that the last thing she heard Chavez tell Rene was to "go." There is more than sufficient circumstantial evidence that Chavez and his brother acted recklessly, under circumstances manifesting extreme indifference to the value of human life and causing great bodily harm. Contrary to Chavez' position, there is ample evidence Chavez adopted and supported Rene's conscious disregard of the risks associated with driving through an alleyway crowded with people.

Simply put, Chavez' arguments are unpersuasive. Chavez was convicted of abetting crimes of a reckless nature. Any question about how much time Chavez and Rene had to conspire over committing the crimes is irrelevant. Further, the location of the persons who may have started the fight is irrelevant. And, contrary to Chavez' claim, witnesses testified the truck was indeed speeding and "revving up" as people tried to get out of the way. There is sufficient evidence to support the convictions.

*We next examine the claimed instruction errors, beginning with aiding and abetting.*

The court advised the jury in Instruction No. 9 that the mere presence of someone at a crime scene does not make them culpable. Chavez argues the instruction does not conform to the pattern instruction and should not be given since the underlying crime charges a reckless and unintentional act. After looking at all of the instructions, we conclude the jury was not misled and the instruction Chavez complains about was an accurate statement of the law. Therefore, we find no error here.

Our standard of review concerning jury instructions where a party objects has been repeated often. We look at the accuracy of

the instructions and then all of the instructions and see if the jury has been misled:

"When a party has objected to an instruction at trial, the instruction will be examined on appeal to determine if it properly and fairly states the law as applied to the facts of the case and could not have reasonably misled the jury. In making this determination an appellate court is required to consider the instructions as a whole and not isolate any one instruction. [Citations omitted.]" *State v. Appleby*, 289 Kan. 1017, 1059, 221 P.3d 525 (2009).

The district court read Instruction No. 9 to the jury:

"MERE PRESENCE OF AN ACCUSED AT THE TIME AND PLACE OF THE CRIME ALLEGED IS NOT SUFFICIENT TO MAKE THE ACCUSED GUILTY OF THE CRIME, BUT IF FROM THE FACTS AND CIRCUMSTANCES SURROUNDING THE DEFENDANT'S PRESENCE AT THE TIME AND FROM THE DEFENDANT'S CONDUCT IT APPEARS THAT THE DEFENDANT'S PRESENCE DID IN FACT ENCOURAGE SOMEONE ELSE TO COMMIT THE CRIMINAL ACT, GUILT MAY BE INFERRED."

Chavez objected to this instruction at trial, contending that the jury would automatically find Chavez guilty under this instruction just because he got into the truck with his brother. On appeal, Chavez shifts his position a bit and argues Instruction No. 9 should not have been given because the instruction does not conform to the pattern instruction and the underlying crime charges a reckless and unintentional act. Chavez did not make these arguments at trial. As a general rule, issues not raised before the district court may not be raised on appeal. *State v. Sherrod*, 40 Kan. App. 2d 564, 571, 194 P.3d 593 (2008), *rev. denied* 288 Kan. 835 (2009). But since Chavez objected to the instruction, even though it was on a different basis than that on appeal, we will consider his claim.

The source for this instruction is *State v. Wakefield*, 267 Kan. 116, 121, 977 P.2d 941 (1999). In *Wakefield*, the defendant was convicted of premeditated murder under an aiding and abetting theory. Wakefield and another man named Gavin Scott were committing a residential burglary and theft when Scott asked Wakefield if he wanted "to do" the victims. Wakefield said no, but Scott took his rifle upstairs and killed two people. After using language similar to that found in Instruction No. 9, our Supreme Court held Wake-

field's acquiescence in Scott's decision to go upstairs to kill the two and Wakefield's continued participation in the theft and aggravated burglary including his failure to oppose the premeditated killings was sufficient evidence for the jury to find him guilty of aiding and abetting the murders. 267 Kan. at 123. Clearly the Supreme Court found three points significant in *Wakefield*: the defendant's knowledge of the imminence of violence, his acquiescence and/or participation in the acts, and his refusal to withdraw from the scene.

The factors of knowledge of the imminence of violence and acquiescence were also important in a case where the defendant was charged with aiding and abetting a crime resulting from reckless conduct. See *State v. Garza*, 259 Kan. 826, 830-35, 916 P.2d 9 (1996). Garza was charged with aggravated battery when he and another man began shooting one another and the other man's bullet hit a bystander. The court explained:

"Garza was charged with recklessly causing great bodily harm or disfigurement of another person. In general, two persons act in concert when one engages in conduct and the other intentionally aids him or her in that conduct. The law also provides that individuals may act together in the commission of a crime based upon their depraved, indifferent, or reckless conduct. [Citation omitted.]" 259 Kan. at 834.

Importantly, the court stated: "Giving assistance or *encouragement to one who it is known will thereby engage in conduct dangerous to life is sufficient* for accomplice liability as an aider or abettor as to crimes defined in terms of recklessness or negligence. [Citation omitted.]" (Emphasis added.) 259 Kan. at 835.

We note that another panel of this court in *State v. Friday*, No. 101,806, unpublished opinion filed August 6, 2010, *pet. for rev.* granted April 12, 2011 (pending), found *Garza* controlling and rejected the argument that an aiding and abetting instruction should not be given where the underlying crime charges a reckless and unintentional act. Slip op. at 8. Based on *Garza*, we find no error in the district court here instructing the jury on aiding and abetting where Chavez was charged with a reckless and unintentional crime.

Moving on, we do not think the jury in this case was misled by the instruction. Chavez argues the jury was led to infer guilt where there was no actual evidence that Chavez did anything. The record

indicates otherwise. A witness testified that as the truck drove through the crowd of people, and as one victim was being hit, Chavez leaned out the window and screamed, "[T]his is what you mother fuckers get, this is Sureno town." The same witness testified Chavez was communicating with Rene during this time and that the last thing she heard Chavez tell Rene was to "go." Other witnesses agreed that Chavez was leaning out the truck window and was yelling and cussing. The jury reasonably concluded that Chavez' conduct and presence encouraged the crimes.

In Chavez' final argument on this point, he contends that by following Instruction No. 9, the jury only needed to find evidence that Rene *felt* encouraged and was not required to find any intentional act on the part of Chavez (*i.e.*, the jury only needed to find that Chavez was "there"). This argument ignores the plain language of the instruction. The jury was instructed that Chavez' mere presence at the scene was not enough. The jury needed to find that Chavez' conduct—and the circumstances surrounding his presence—encouraged his brother Rene to drive through the crowd and thus commit involuntary manslaughter. Again, the evidence in this case supports a finding that Chavez' conduct and presence encouraged the crimes.

*There was no reason to instruct on a lesser crime of voluntary manslaughter.*

At trial, Chavez requested a jury instruction on the lesser included offense of voluntary manslaughter. On appeal, Chavez argues the killings resulted from a "heat of passion," as he and Rene had been involved in a fight and drove over the victims moments later. Chavez also argues that if he adopted Rene's thinking that he needed to "drive out of the crowd in a self defense posture," the instruction was appropriate.

Whether a lesser included crime instruction should be given depends to a great extent on the evidence presented at trial:

"A district judge has a duty to instruct the jury on any lesser included offense established by the evidence, regardless if that evidence is weak or inconclusive. There is, however, no duty to instruct on a lesser included offense if the jury could not reasonably convict the defendant of the lesser included offense based on the evidence presented. [Citations omitted.] When reviewing a district judge's refusal

to give a requested instruction, this court must view the evidence in the light most favorable to the requesting party.' [Citation omitted.]" *State v. Henson,* 287 Kan. 574, 582, 197 P.3d 456 (2008).

Voluntary manslaughter is defined in K.S.A. 21-3403 as the intentional killing of a human being committed (1) upon a sudden quarrel or in the heat of passion or (2) upon an unreasonable but honest belief that the circumstances justified deadly force such as self-defense or defense of others. In this case, the district court held the voluntary manslaughter instruction was not warranted because when Rene drove the truck through the crowd, Chavez was no longer at risk for harm. The court said Chavez had "plenty of time to reflect and consider his actions."

Regaining self-control is important when considering this issue. In *Henson,* our Supreme Court upheld the district court's refusal to instruct on voluntary manslaughter where the victim knocked Henson unconscious, Henson went home, spoke with his wife, obtained a gun, and returned later to shoot the victim. The court reasoned there was a sufficient cooling-off period for Henson to regain control over his actions. 287 Kan. at 583.

The record indicates that Chavez and Rene were physically removed from the fight. In fact, they were both escorted by night club security to their truck so they could leave. There is no evidence the brothers were acting in self-defense. In fact, defense counsel withdrew his request for a self-defense instruction because he did not believe the evidence supported the giving of that instruction. This court cannot conclude, based on the record before it, that there was legally sufficient provocation to support a voluntary manslaughter instruction. A jury could not reasonably have convicted Chavez of voluntary manslaughter given the evidence presented at trial.

*The court did not err when it did not give a mistake of fact or diminished capacity jury instruction.*

Chavez also requested jury instructions at trial on ignorance or mistake of fact and diminished capacity based on alcohol intoxication. To us, he argues the court's refusal to give the instructions was reversible error. We do not see how it is reversible.

When a district court refuses to give a requested instruction, this court reviews the evidence in a light most favorable to the party requesting the instruction. *State v. Ransom*, 288 Kan. 697, 713, 207 P.3d 208 (2009). A defendant is entitled to jury instructions on the law applicable to his or her theory of defense if there is evidence to support that theory. Nevertheless, there must be evidence that, viewed in the light most favorable to the defendant, is sufficient to justify a rational factfinder finding in accordance with the defendant's theory. *State v. Hendrix*, 289 Kan. 859, 861, 218 P.3d 40 (2009).

Chavez argues the district court should have instructed the jury on ignorance or mistake of fact because he may have thought Rene was driving into the crowd to pick up Mares or other belongings. Chavez claims he may have been unaware that Rene was going to swerve into the crowd or continue driving once he hit someone. A cursory review of the record reveals no evidence that the brothers may have been returning to the crowd to pick something or someone up. Likewise, Chavez points to no evidence suggesting so. Furthermore, witness testimony regarding what Chavez was screaming as the truck passed through the crowd, as one victim was being hit, defies this theory. Even viewing the evidence in a light most favorable to Chavez, the evidence was insufficient to have warranted an instruction on ignorance or mistake of fact where there is no basis for concluding Chavez was unaware of what was happening.

Likewise, Chavez argues the district court should have instructed the jury on diminished capacity because Mares said there was alcohol in the vehicle—thus, alluding to the fact that Chavez may have been intoxicated. The district court refused to give the instruction, stating there was very little evidence Chavez was intoxicated and absolutely no evidence he was robbed of his mental faculties—thus, the instruction would be "wholly inappropriate."

A duty to instruct on intoxication arises only when there is evidence upon which a jury might find the defendant's mental faculties were "impaired to the extent defendant was incapable of forming the necessary specific intent required to commit the crime." *State v. Gonzales*, 253 Kan. 22, 24, 853 P.2d 644 (1993). Here, there was little to no evidence that Chavez was intoxicated

on the night of the killings. When asked whether Rene and Chavez had been drinking, Mares said they "might have." And while the record contains other brief references to the involvement of alcohol (we note Chavez fails to point to such evidence), there is certainly no evidence Chavez was so impaired a jury could reasonably find he was incapable of forming intent. The evidence was insufficient to have warranted an instruction on diminished capacity. We find no error here.

*We find no error in the court's refusal to instruct the jury on vehicular homicide.*

In his final argument, Chavez contends the court erred when it refused to instruct the jury on the law of vehicular homicide as he requested. Using the same test as we set out above, we conclude there was no need for the court to so instruct the jury.

First, the definition of vehicular homicide is found in K.S.A. 21-3405:

"Vehicular homicide is the unintentional killing of a human being committed by the operation of an automobile, airplane, motor boat or other motor vehicle in a manner which creates an unreasonable risk of injury to the person or property of another and which constitutes a material deviation from the standard of care which a reasonable person would observe under the same circumstances."

Cases that have construed this statute deal with the negligence concept contained in the phrase "material deviation" in the statute. In *State v. Krovvidi*, 274 Kan. 1059, 1069, 58 P.3d 687 (2002), our Supreme Court stated that the meaning of "material deviation" depends upon the facts of each case. "Material deviation" means "conduct amounting to more than simple or ordinary negligence and yet it is conduct not amounting to gross and wanton negligence." 274 Kan. at 1069. In that case, the court held the act of running a red light, where there were no other aggravating factors present (*i.e.*, the driver was not under the influence of alcohol or drugs, the passengers were not concerned and did not warn the driver of the intersection, and the driver was not speeding), did not amount to a material deviation under K.S.A. 21-3405. 274 Kan. at 1075.

In contrast, in *State v. Doub*, 32 Kan. App. 2d 1087, 95 P.3d 116, *rev. denied* 278 Kan. 848 (2004), the defendant, who had been drinking and using drugs, drove over the top of the victim's vehicle, propelling it off the street and into a tree. Doub left the scene, failing to aid the victims, and then later denied any involvement in the collision. In challenging his conviction for second-degree murder, Doub argued his conduct was not even egregious enough to constitute vehicular homicide. Finding the facts far more egregious than those present in *Krovvidi*, this court upheld his conviction. 32 Kan. App. 2d at 1094.

The facts here are just as bad as those found in *Doub*. Although the district court in this case was incorrect in stating vehicular homicide involves "simple negligence," the court was nevertheless correct in its ultimate conclusion that an instruction on vehicular homicide was not warranted under these facts. Similar to the facts in *Doub*, Chavez and his brother may have been drinking. As the brothers drove through a crowd of people and one victim was being hit, Chavez screamed, "[T]his is what you . . . get." A witness testified the truck was speeding, did not have brake lights on, and did not slow down. Another witness told officers the truck was "revving up" as people tried to get out of the way. Rene's and Chavez' actions constitute more than a material deviation from the standard of care required of a reasonable person, instead displaying gross and wanton negligence. The evidence did not warrant an instruction on vehicular homicide.

We affirm the convictions.