NOT DESIGNATED FOR PUBLICATION

No. 114,337

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CARLOS CHAVEZ-AGUILAR, JR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed December 2, 2016. Affirmed.

*Charles A. O'Hara*, of O'Hara and O'Hara LLC, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER and LEBEN, JJ.

LEBEN, J.: Carlos Chavez-Aguilar, Jr., was convicted of reckless second-degree murder, involuntary manslaughter, and aggravated battery after he and his brother drove a truck through a crowd of people outside a nightclub in Wichita. After trial, he sought habeas relief under K.S.A. 60-1507, arguing that his trial attorney had been ineffective, but the district court denied that motion.

He makes three arguments on appeal. First, he claims that his attorney didn't tell him about a plea offer from the State—but as the district court found, there's no evidence

that the State made a plea offer for his attorney to tell him about. Second, he says that a video of the incident was played faster than normal during trial and that his attorney failed to object. That's all true, but the trial transcript shows that no one knew at that time that the video was playing too fast. Moreover, we fail to see how driving at a somewhat slower speed right through a crowd of people would be any less reckless. Third, Chavez-Aguilar argues that his counsel should have cross-examined Keoli Gonzalez, who survived being hit by the truck and was cross-examined at Chavez-Aguilar's brother's trial. But cross-examination is a matter of trial strategy that this court won't second-guess simply because another attorney might have done it differently. Our review of the record shows that the decision not to cross-examine a highly emotional victim wasn't unreasonable. Chavez-Aguilar has not shown that his attorney provided constitutionally inadequate representation at the trial, so we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Around 1:30 a.m. one morning in August 2008, a gang-related fight involving Chavez-Aguilar and his brother, Rene, erupted outside a nightclub in Wichita. As the fight wound down, Rene drove his truck through the crowd, killing two people and injuring a third. Chavez-Aguilar was in the passenger seat, and according to several witnesses, he was shouting and cursing out the window as Rene drove.

In March 2009, a jury convicted Chavez-Aguilar, on an aiding-and-abetting theory, of second-degree murder, involuntary manslaughter, and aggravated battery; the district court sentenced him to 268 months in prison. More detailed facts from the underlying criminal case are set forth in this court's opinion affirming Chavez-Aguilar's sentence and convictions: *State v. Chavez-Aguilar*, 45 Kan. App. 2d 775, 253 P.3d 362 (2011).

In December 2012, Chavez-Aguilar filed a timely petition for habeas corpus relief under K.S.A. 60-1507, arguing that his trial was unfair because his attorney, Bradley Sylvester, had been ineffective at trial. He said Sylvester failed to properly inform him about a plea offer, allowed a video of the crime to be played at an accelerated speed, and failed to cross-examine a witness at trial. The district court held two preliminary, nonevidentiary hearings and determined that it could decide the video and cross-examination issues without additional evidence. It then held an evidentiary hearing on the plea issue; Sylvester, Chavez-Aguilar, and Chavez-Aguilar's former girlfriend testified.

The district court found no evidence that a plea offer was ever made, so the court concluded that Sylvester couldn't have been ineffective for failing to tell Chavez-Aguilar about one. With regard to the video and the cross-examination, the district court found that Sylvester hadn't been ineffective and that even if he had been, Chavez-Aguilar hadn't been prejudiced.

Chavez-Aguilar has appealed to this court. As we discuss the issues Chavez-Aguilar has raised, we will add additional facts from his criminal trial and from the K.S.A. 60-1507 hearing where needed.

ANALYSIS

Chavez-Aguilar argues that the district court should have found that his trial counsel was ineffective and granted him a new trial.

When the district court has conducted a preliminary or evidentiary hearing on a K.S.A. 60-1507 motion, as it did here, we apply a two-part standard of review, asking: (1) Are the district court's factual findings supported by substantial evidence? and (2) Are those findings sufficient to support the district court's conclusions of law? *Bellamy v. State*, 285 Kan. 346, 354-55, 172 P.3d 10 (2007). Substantial evidence is evidence that a

3

reasonable person would find sufficient to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). We owe no deference to the district court's conclusions of law, so we must independently determine whether habeas relief should have been granted. *Bellamy*, 285 Kan. at 354-55.

K.S.A. 60-1507(b) provides that the district court shall set aside a petitioner's conviction if, among other reasons, "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." One such constitutional right is the right to counsel: The Sixth Amendment to the United States Constitution guarantees the right to counsel, which includes the right to *effective* counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 669, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). So ineffective assistance of counsel is a denial or infringement of constitutional rights that renders a judgment vulnerable to collateral attack (that is, an action separate from the original case or direct appeal). See K.S.A. 60-1507(b).

To get a new trial based on the claim that his attorney was ineffective, Chavez-Aguilar has to show both that his trial counsel's performance fell below an objective standard of reasonableness and that he suffered material legal prejudice as a result, meaning there's a reasonable probability that the outcome would have been different had his counsel acted differently. *Strickland*, 466 U.S. at 687-88; see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3-4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance). Our review of the attorney's performance should be deferential and not influenced by our knowledge—in hindsight—that the attorney's efforts weren't successful. *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011).

Chavez-Aguilar argues that his trial counsel was ineffective in three specific ways. First, he claims that Sylvester was ineffective by failing to inform him of an actual plea offer or failing to negotiate a plea offer at all.

4

The vast majority of criminal convictions (97% in federal courts and 94% in state courts) are the result of guilty pleas. *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399, 1407, 182 L. Ed. 2d 379 (2012). Thus, because the right to effective assistance of counsel covers all *critical* stages of a criminal proceeding, it also includes the right to effective assistance of counsel during plea-bargain negotiations, which have become a large part of the criminal-justice system. *Padilla v. Kentucky*, 559 U.S. 356, 373-74, 130 S. Ct. 1473, 176 L. Ed. 2d 2843 (2010). In *Frye*, the Court held "that, as a general rule, defense counsel has the duty to communicate [to the defendant] formal offers from the prosecution." 132 S. Ct. at 1408. Defense counsel's other responsibilities during plea negotiations are not currently well defined. See *Frye*, 132 S. Ct. at 1408; 132 S. Ct. at 1412 (Scalia, J., dissenting) ("In other cases, however, it will not be so clear that counsel's plea-bargaining skills, which must now meet a constitutional minimum, are adequate."). Significantly for our case, a defendant has no right to be offered a plea bargain. 132 S. Ct. at 1410 (citing *Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S. Ct. 837, 51 L. Ed. 2d 30 [1977]).

Here, the district court held an evidentiary hearing on the plea issue and found that, as a factual matter, there was no formal plea offer; thus, Sylvester couldn't have been ineffective for not telling Chavez-Aguilar about a plea. Sylvester testified that the case file didn't include any written plea offers, that he couldn't specifically remember whether there had been an actual plea offer in this case, and that he always conveyed plea offers— when they existed—to his clients.

Sylvester thought he recalled having overheard the prosecutors discussing something about 5 years, but he was very clear in his testimony that he did not recall an actual offer for 5 years. He said that if there had been a 5-year offer, he would have conveyed it to Chavez-Aguilar and that it would have been his client's decision whether to take the deal "because he had a lot to lose if he lost." Sylvester said that he had felt a

5

lot of pressure in this case because he believed that Chavez-Aguilar shouldn't be convicted. He said that a 5-year deal would have taken some of that pressure away and would have been a good offer based on the possible sentences his client would face by going to trial. Chavez-Aguilar's testimony aligned with Sylvester's: He said that Sylvester had told him about overhearing the 5-year conversation but hadn't told him anything more specific or conveyed any actual plea offers.

The only suggestion that there had been a real plea offer came from Chavez-Aguilar's former girlfriend, Jeniffer Rodriguez. She testified that Sylvester had told her at least six or seven times that the State had offered a 5-year plea deal. According to Rodriguez, Sylvester had told her to encourage Chavez-Aguilar not to take the plea because he was going to win the case. Rodriguez said that she had told Chavez-Aguilar about the 5-year plea offer at least twice. But Chavez-Aguilar testified differently, saying that while he and Rodriguez had discussed the 5-year conversation that Sylvester had overheard, she had never told him about a formal plea offer. Sylvester testified that he didn't recall whether he had talked with Rodriguez about anything related to 5 years but said that he wouldn't have sent Rodriguez to talk to Chavez-Aguilar about a plea offer; he would have had any plea conversations with Chavez-Aguilar himself.

In sum, the only evidence of a plea offer came from Rodriguez; there was no record of a formal plea, and Chavez-Aguilar and Sylvester both contradicted Rodriguez' testimony that she had conveyed a 5-year deal to Chavez-Aguilar on behalf of Sylvester. Thus, the district court's conclusion that no plea offer existed was supported by substantial evidence. Furthermore, the evidence suggests that even though there weren't formal plea offers in this case, Sylvester nonetheless kept Chavez-Aguilar informed about the state of plea negotiations—he told Chavez-Aguilar about the prosecutor's conversation that he had overheard. If there wasn't a plea offer, then Sylvester couldn't have been ineffective by not telling Chavez-Aguilar about it. See *Frye*, 132 S. Ct. at 1408.

Chavez-Aguilar also claims that Sylvester's plea-negotiation skills were constitutionally deficient. But this is the first time Chavez-Aguilar has made such a claim: The only issue before the district court, according to Chavez-Aguilar's own testimony and statements from his counsel at the K.S.A. 60-1507 hearing, was simply whether Sylvester had informed Chavez-Aguilar about a plea offer, not whether Sylvester's plea-negotiation skills were reasonable or effective.

Generally, an appellate court can't hear claims raised for the first time on appeal. *State v. Rizo*, 304 Kan. 974, 978, 377 P.3d 419 (2016). But there are exceptions to this rule, including when considering the issue is necessary to serve the ends of justice or to prevent the denial of fundamental rights (such as the right to counsel). 304 Kan. at 978-79. Here, though, Chavez-Aguilar also fails to explain why this issue is properly before this court, as required by Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41). *State v. Swint*, 302 Kan. 326, 335-36, 352 P.3d 1014 (2015). Failure to comply with this rule usually means that the court won't consider any claims raised for the first time on appeal. See *Swint*, 302 Kan. at 335-36. We recognize, though, that the rules about claims raised for the first time on appeal are prudential, not jurisdictional, so we still have the option of considering the merits of an issue raised for the first time on appeal. See *Rizo*, 304 Kan. at 979. Because it's possible that considering this issue is necessary to prevent the denial of the fundamental right to counsel, we will briefly address the merits of Chavez-Aguilar's new claim. See 304 Kan. at 978-79.

Chavez-Aguilar claims that Sylvester's plea-negotiation skills fell below an objective standard of reasonableness because it's uncommon for a murder case to progress without any plea offers and there weren't any plea offers in this case. See *Frye*, 132 S. Ct. at 1407-08; *Strickland*, 466 U.S. at 687-88. This is a leap in logic that we are unwilling to take. Sylvester testified that he had talked with the State about possible plea deals but that the discussions never led to an actual offer from the State. He also said that

7

the State had actually tried to *increase* the charges against Chavez-Aguilar just before the trial began, which suggests that the State simply wasn't interested in offering a plea to Chavez-Aguilar, no matter Sylvester's negotiation skills. We cannot assume Sylvester was ineffective—that his plea-negotiating skills fell below an objective standard of reasonableness—simply because the State didn't offer Chavez-Aguilar a plea. After all, while a criminal defendant is entitled to effective assistance of counsel, he or she isn't entitled to receive a plea offer. See *Frye*, 132 S. Ct. at 1410. The government always has the option of taking the case to trial on the charge it has made and seeking the maximum penalty available under the law rather than offering a reduced charge or the recommendation of a reduced sentence in exchange for a guilty plea.

Second, Chavez-Aguilar argues that Sylvester was ineffective because the video of the incident was played for the jury at a faster-than-normal speed, and Sylvester didn't object.

The purpose of guaranteeing criminal defendants effective assistance of counsel is to ensure a fair trial. *Chamberlain*, 236 Kan. at 654 (quoting *Strickland*, 466 U.S. at 686). As stated earlier, Chavez-Aguilar must show two things to prove that Sylvester was ineffective: (1) that Sylvester's acts or omissions, considering all of the circumstances, were not the result of reasonable professional judgment; and (2) that there's a reasonable probability that the result would have been different if counsel had been effective. *Strickland*, 466 U.S. at 687-88, 694.

Here, it's not disputed that the video of the truck driving through the crowd was played too fast—60 seconds of video played for the jury in 38 seconds. And because Chavez-Aguilar was charged with intentional second-degree murder and reckless second-degree murder (and was convicted of involuntary manslaughter and reckless second-degree murder), the speed at which the truck was moving when the victims were killed—as depicted in the video—is legally relevant to the level of fault the jury assigned to

8

Chavez-Aguilar. But the actual issue here, in this K.S.A. 60-1507 motion, is whether Sylvester was ineffective for failing to object to how the video was played.

The district court found that at the time of Chavez-Aguilar's trial, no one knew that the video was playing too fast, so it wasn't unreasonable for Sylvester not to object. This conclusion is supported by substantial evidence. While cross-examining a witness about the video, Sylvester specifically said to the prosecutor: "Slow down to normal speed, please." The prosecutor replied: "It is." This exchange makes clear that the State didn't know that the video was playing too fast and that Sylvester tried to ensure that the video was playing at the correct speed. It wasn't until a few months later, for Chavez-Aguilar's brother's trial, that the State learned the video had been playing too fast and corrected the speed.

Chavez-Aguilar states in his brief that the trial court knew the video had been played too fast. But he doesn't cite to the record to support that statement, and nothing in our review of the record indicates that anyone knew, at that time, that the video was playing too fast. Sylvester specifically asked for the video to be played at normal speed— that it wasn't does not demonstrate that he provided inadequate representation.

Additionally, we agree with the district court that even if Sylvester had objected and the video had been played at the correct speed, it probably wouldn't have affected the outcome; the video was played at the correct speed in Chavez-Aguilar's brother's trial, and the jury still convicted him of two counts of reckless second-degree murder. See *State v. Chavez-Aguilar*, No. 103,878, 2011 WL 6382742, at *1 (Kan. App. 2011) (affirming Chavez-Aguilar's brother's convictions). We fail to see how driving a truck through a crowd of people at a slightly lesser speed would have been any less reckless or any less indifferent to the value of human life.

9

Third, Chavez-Aguilar argues that Sylvester was ineffective when he failed to cross-examine one of the witnesses—Keoli Gonzalez—about earlier statements she had made that were slightly inconsistent with what she said at trial.

Gonzalez was hit by the truck that night but wasn't killed; she testified that her injuries had included a broken pelvis and burns on her lower body and arms. The two people who were killed were her brother and her aunt.

As you would expect in these circumstances, even a transcript shows that her trial testimony was highly emotional—at one point, the prosecutor offered her a tissue; the court asked if she needed to take a break. Gonzalez testified that the truck had hit her and rolled over her, that she had heard screaming, and that she had heard someone say "that we deserved it." She didn't attribute that statement to anyone or give any other details about the experience. Sylvester did not cross-examine her about statements she had made to police the night of the incident; instead, he opted to cross-examine the police officer who had taken Gonzalez' statement that night.

Gonzalez also testified at the trial of Chavez-Aguilar's brother, Rene. Gonzalez was similarly emotional and testified in more detail this time: She said that she saw the truck before it hit her, that she was hit by the front of the truck, and that she heard either Rene or Chavez-Aguilar say to the crowd of people that "that's what [they] deserved." Rene's trial counsel cross-examined Gonzalez by comparing her testimony at that trial to (1) statements she made to police just after she was injured, (2) her testimony at Chavez-Aguilar's trial, and (3) her testimony at Rene's preliminary hearing. The focus of the cross-examination was on the new details in her testimony—how the truck had hit her and that it was Rene or Chavez who had yelled that the crowd "deserved" this.

The district court found that at the time of Chavez-Aguilar's trial, there simply weren't any inconsistent statements in Gonzalez' testimony, and this conclusion is

10

supported by substantial evidence. Rene's trial (and his preliminary hearing) took place after Chavez-Aguilar's, so when Gonzalez testified at Rene's trial, she was cross-examined about what she had said during the first trial and at the preliminary hearing. This type of questioning simply wasn't possible during Chavez-Aguilar's trial, where Gonzalez was testifying about this incident for the first time.

Defense counsel at Rene's trial also cross-examined Gonzalez using her statements to police on the night she was hit by the truck. It's conceivable that Chavez-Aguilar's counsel could have done this as well: Gonzalez didn't mention to the police that night that she had heard someone yell that they "deserved" this. Additionally, she had asked the police that evening who had hit her; she hadn't known at the time that the vehicle was a truck or who was in the vehicle. Rene's defense counsel also elicited from Gonzalez that she had had between five and ten beers that night. But none of these statements that Rene's counsel elicited from Gonzalez are directly contradictory to Gonzalez' testimony at Chavez-Aguilar's trial.

Cross-examination is a matter of strategy, and we won't find counsel was ineffective simply because another attorney might have tried the case differently. *Crease v. State*, 252 Kan. 326, 338, 845 P.2d 27 (1993) (quoting *State v. Kendig*, 233 Kan. 890, 896, 666 P.2d 684 [1983]). This case presents a fine example of this concept: Two different attorneys took two different approaches to the same witness about the same events. Sylvester's decision not to cross-examine an emotional witness who had been seriously injured was a legitimate strategic decision. Additionally, in both cases, the defendants were convicted—so we also agree with the district court's conclusion that had Sylvester cross-examined Gonzalez, there's no reasonable possibility that the outcome of the trial would have been different.

We affirm the district court's judgment.