(95 P.3d 116)

No. 90,536

STATE OF KANSAS, *Appellee,* v. JOHN P. DOUB, III, *Appellant.*

Opinion filed August 6, 2004.

*Korey A. Kaul,* assistant appellate defender, for appellant.

Kristi L. Barton, assistant district attorney, Nola Foulston, district attorney, and Phill Kline, attorney general, for appellee.

Before GREENE, P.J., MCANANY, J., and BRAZIL, S.J.

GREENE, J.: John P. Doub, III, appeals his conviction of second-degree murder pursuant to K.S.A. 21-3402(b), claiming insufficiency of evidence. We affirm.

*Factual and Procedural Overview*

Following a party for his softball team at a club where he admitted drinking six beers, Doub admitted that his pickup struck two parked vehicles and that he left the scene because he was concerned that he had been drinking. Doub ultimately admitted that approximately 2 hours after striking the parked cars, he drove his pickup into the rear of a Cadillac in which 9-year-old Jamika Smith was a passenger. According to the State's accident investigator, the collision occurred as Doub's pickup, "going tremendously faster," drove "up on top of [the Cadillac]," initially driving it down into the pavement, and ultimately propelling it off the street and into a tree. Doub offered no aid to the victims, left the scene of the accident, and initially denied any involvement in the collision, suggesting that his pickup had been stolen. Some 15 hours after the collision, Smith died as a result of blunt traumatic injuries caused by the collision.

Approximately 6 months after these events, Doub admitted to a former girlfriend that he had a confrontation with his second ex-wife the evening of the collision, had been drinking alcohol and smoking crack, and had subsequently caused the collision. The girlfriend approached the authorities with Doub's statements, which suggested that Doub left the softball party, caused the collisions with the parked vehicles, left that scene, subsequently consumed the additional alcohol and crack cocaine, and then caused the collision resulting in Smith's death, all within a 2- to 3-hour period.

Doub was charged with: (1) second-degree depraved heart murder, with lesser included offenses of involuntary manslaughter and vehicular homicide; (2) involuntary manslaughter while driving under the influence of alcohol and/or drugs, with the lesser included

offense of driving under the influence of alcohol and/or drugs; and (3) leaving the scene of an injury accident. The jury found Doub guilty of all three primary offenses, but the court later dismissed the second offense of involuntary manslaughter. Doub appeals, challenging the sufficiency of evidence to support his conviction of second-degree depraved heart murder.

*Standard of Review*

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Jamison*, 269 Kan. 564, 571, 7 P.3d 1204 (2000).

*Elements of Second-degree "Depraved Heart" Murder*

K.S.A. 2003 Supp. 21-3402 defines second-degree murder as follows:

"Murder in the second-degree is the killing of a human being committed:
(a) Intentionally; or
(b) unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life."

When the offense is committed pursuant to subsection (b), our courts have employed the common-law nomenclature of "depraved heart" second-degree murder. See, *e.g.*, *State v. Hebert*, 277 Kan. 61, 104, 82 P.3d 470 (2004).

In *State v. Robinson*, 261 Kan. 865, 876-78, 934 P.2d 38 (1997), our Supreme Court discussed the requirements for depraved heart murder:

"Both depraved heart murder and reckless involuntary manslaughter require recklessness—that the killing be done under circumstances showing a realization of the imminence of danger and a conscious disregard of that danger. *Depraved heart murder requires the additional element that the reckless killing occur under circumstances manifesting extreme indifference to the value of human life.*

. . . .

"We hold that depraved heart second-degree murder requires a conscious disregard of the risk, sufficient under the circumstances, to manifest extreme indifference to the value of human life. *Recklessness that can be assimilated to purpose*

*or knowledge is treated as depraved heart second-degree murder,* and less extreme recklessness is punished as manslaughter. Conviction of depraved heart second-degree murder requires proof that the defendant acted recklessly under circumstances manifesting extreme indifference to the value of human life. This language describes a kind of culpability that differs in degree but not in kind from the ordinary recklessness required for manslaughter." (Emphasis added.) 261 Kan. at 876-78.

In *Robinson,* the court specifically rejected the argument that the offense required general indifference to the value of *all* human life and concluded that the elements could be met if the defendant manifested an extreme indifference to the value of one specific human life. 261 Kan. at 880. In *State v. Davidson,* 267 Kan 667, 684, 987 P.2d 335 (1999), the court reiterated the *Robinson* criteria and held that the offense was committed by a defendant who created an unreasonable risk and then consciously disregarded it in a manner and to the extent that it reasonably could be inferred that she was extremely indifferent to the value of human life.

We find no reported decision in Kansas construing and applying K.S.A. 21-3402(b) in the context of a vehicular collision and therefore approach this appeal as a case of first impression.

*Overview of Depraved Heart Murder by Vehicle in Other Jurisdictions*

The state of mind or *mens rea* required for second-degree murder has been somewhat problematic throughout the history of Anglo-American jurisprudence. As early as 1762, Sir Michael Foster termed the requisite mental state for the common-law offense as a "heart regardless of social duty and fatally bent upon mischief." Foster, Crown Law 257 (1762). Since the advent of the automobile in the nineteenth century, many jurisdictions have struggled with the application of second-degree murder statutes in this context, and the debate seems to have been focused largely on whether malice, whether express or implied, should be required. See, *e.g., State v. Chalmers,* 100 Ariz. 70, 411 P.2d 448 (1966). We need not enter this debate, however, since our Supreme Court has determined that the 1993 amendment to the second-degree murder statute eliminated malice as an element of second-degree murder in Kansas. *State v. McCown,* 264 Kan. 655, Syl. ¶ 1, 957 P.2d 401

(1998). Instead, our focus is the statutory language adopted in Kansas that apparently had its genesis in the Model Penal Code first proposed in 1962, which required killing "recklessly under circumstances manifesting extreme indifference to the value of human life." A.L.I., Model Penal Code § 210.2 (Proposed Official Draft 1962).

Since 1975 the appellate courts of many states have acknowledged that the required state of mind for depraved heart murder can be attributed to the driver of an automobile. See, *e.g.*, *Davis v. State*, 593 So. 2d 145, 148 (Ala. Crim. App. 1991) (holding that under Alabama depraved heart statute, driver could be convicted if the driver was "conscious of his acts, the impending dangers surrounding him, and the probable results of the acts, and, with reckless indifference to the probable consequences of his acts, brought about the collision and the death of the deceased"). Our review of such cases reveals that most jurisdictions with statutory provisions patterned after the Model Penal Code have acknowledged that the offense may be committed by automobile. Cases to the contrary generally construe and apply statutes that retain some requirement of malice. See, *e.g. State v. Ellison*, 561 So. 2d 576 (Fla. 1990) (holding that under Florida law, defendant's conviction of second-degree murder for speeding and eluding officers during a high speed pursuit could not stand without evidence of " 'ill-will, hatred, spite or an evil intent' "); see Annot., *Homicide By Automobile As Murder*, 21 A.L.R.3d 116.

One commentator surveyed 20 cases between 1975 and 1986 and found the following factors as persuasive of the requisite state of mind:

"1. *Intoxication.* The driver was using alcohol, illegal drugs, or both.
"2. *Speeding.* Usually excessive rates are recorded.
"3. *Near or nonfatal collisions shortly before the fatal accident.* Courts believe that collisions should serve as a warning to defendants that their conduct is highly likely to cause an accident. Failure to modify their driving is viewed as a conscious indifference to human life.
"4. *Driving on the wrong side of the road.* Many cases involve head-on collisions. Included here is illegally passing or veering into oncoming traffic.
"5. *Failure to aid the victim.* The driver left the scene of the accident and/or never attempted to seek aid for the victim.

"6. *Failure to heed traffic signs.* Usually more than once prior to the fatal accident, the driver ran a red light and/or stop sign.

"7. *Failure to heed warnings about reckless driving.* In *Pears v. State,* for example, the court cited as proof of Pears' extreme indifference to life the fact that he continued driving after he had been warned by police officers not to drive because he was intoxicated. In other cases a police pursuit of the driver for earlier traffic violations was an implicit warning that the defendant's driving was dangerous.

"8. *Prior record of driving offenses (drunk or reckless driving or both).* The relevance of a defendant's prior record for reckless or intoxicated driving is, as *United States v. Fleming* pointed out, not to show a propensity to drive while drunk but 'to establish that defendant had grounds to be aware of the risk his drinking and driving while intoxicated presented to others.' " Luria, *Death on the Highway: Reckless Driving as Murder,* 67 Or. L. Rev. 799, 823 (1988).

Application of these factors seems appropriate to determine whether evidence in a particular case meets the requisite state of mind, but we are mindful that no precise universal definition or exclusive criteria is appropriate. The comments to the Model Penal Code declare that "recklessness" must be of such an extreme nature that it demonstrates an indifference to human life similar to that held by one who commits murder purposely or knowingly, but precise definition is impossible.

"The significance of purpose of knowledge as a standard of culpability is that, cases of provocation or other mitigation apart, purposeful or knowing homicide demonstrates precisely such indifference to the value of human life. Whether recklessness is so extreme that it demonstrates similar indifference is not a question, it is submitted, that can be further clarified. It must be left directly to the trier of fact under instructions which make it clear that recklessness that can fairly be assimilated to purpose or knowledge should be treated as murder and that less extreme recklessness should be punished as manslaughter." A.L.I., Model Penal Code & Commentaries, Part II § 210.2, Comment. 4, pp. 21-22 (1980).

*Did the Evidence Against Doub Establish the Requisite State of Mind for Second-degree Murder?*

Many of the factors cited as relevant to the requisite state of mind in similar prosecutions beyond Kansas are present here. Viewing the evidence in the light most favorable to the prosecution, our examination of the record shows:

(i) The State presented evidence of intoxication, both the consumption of beer at the club, but the later consumption of alcohol and use of crack cocaine;

(ii) The State presented evidence of nonfatal collisions shortly before the fatal collision, specifically the collision with two parked vehicles;

(iii) The State presented evidence of speeding at the time of the fatal collision, specifically that Doub's vehicle was moving "tremendously faster" than the vehicle struck;

(iv) The State presented evidence of driving on the wrong side of the road when one of the parked vehicles was hit;

(v) The State presented evidence of leaving the scene of all incidents, both with parked vehicles and the vehicle containing Smith; moreover, Doub did not attempt to render aid to Smith but rather chose to flee to avoid criminal liability;

(vi) The State presented evidence of residents near the parked vehicles shouting at Doub to stop, but Doub failed to heed these warnings.

Doub argues that his conduct was not even sufficiently egregious to constitute vehicular homicide, citing *State v. Krovvidi*, 274 Kan. 1059, 58 P.3d 687 (2002), which reversed a conviction for vehicular homicide. The following language defines the crime of vehicular homicide, which is quite different from the language defining depraved heart murder:

"Vehicular homicide is the unintentional killing of a human being committed by the operation of an automobile, airplane, motor boat or other motor vehicle in a manner which creates an unreasonable risk of injury to the person or property of another and which constitutes a material deviation from the standard of care which a reasonable person would observe under the same circumstances." K.S.A. 21-3405.

The facts in *Krovvidi*, however, differed greatly from those before us. In *Krovvidi*, the State pointed exclusively to inattentive driving and the fact that the driver drove through a red light as factors showing conduct that rose to the level of culpability required under the vehicular homicide statute. 274 Kan. at 1070-71.

Here, the facts are far more egregious. Moreover, depraved heart murder requires an entirely different level of culpability from that required for vehicular homicide. The following language from *Krovvidi* is instructive:

"In this case, there are no aggravating factors present. Krovvidi had not been drinking and was not under the influence of any drug, both factors which may provide the additional evidence to establish a material deviation. None of the passengers in his vehicle warned him as he was about to enter the intersection; none were concerned that his driving appeared reckless or that he was accelerating or speeding as he approached the intersection. Krovvidi was not speeding and proceeded through the intersection thinking his light was green. Absent additional aggravating factors, we conclude that his conduct does not amount to the material deviation required under the provisions [of] K.S.A 21-3405." 274 Kan. at 1075.

In contrast to *Krovvidi*, Doub had been drinking, was undoubtedly under the influence of crack cocaine, ignored commands to stop, was speeding at least by comparison if not illegally, and otherwise exhibited additional factors of recklessness. Doub's reliance on *Krovvidi* is simply misplaced.

Considering the presence of many of those factors significant to other courts, we are convinced that a rational factfinder could have found Doub guilty of depraved heart second-degree murder beyond a reasonable doubt. The evidence against Doub is particularly damning considering that (a) he admits that his driving was preceded by drinking; (b) he admits that he struck two parked cars and ignored commands to stop because he was concerned that he had been drinking; (c) he then consumed additional alcohol and used crack cocaine; (d) he then resumed driving and caused a fatal collision, due in part to excessive speed; (e) he failed to render aid to the victims; and (f) he fled the scene in order to avoid criminal liability. We conclude that these facts clearly demonstrate an extreme indifference to human life.

Affirmed.