NOT DESIGNATED FOR PUBLICATION

No. 116,946

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA MICHAEL MALL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed January 12, 2018.
Affirmed.

*Brandon Katt* and *John W. Thurston*, of Addair Thurston, Chtd., of Manhattan, for appellant.

*James W. Garrison*, assistant county attorney, *Barry K. Disney*, senior deputy county attorney,
*Barry Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: Joshua M. Mall was charged with unintentional second-degree murder under K.S.A. 2015 Supp. 21-5403(a)(2), or in the alternative involuntary manslaughter while driving under the influence (DUI) under K.S.A. 2015 Supp. 21-5405(a)(3); possession of tetrahydrocannabinol (THC) under K.S.A. 2015 Supp. 21-5706(b)(3); transportation of liquor in an open container under K.S.A. 2015 Supp. 8-1599; and transporting a child without proper child safety restraints under K.S.A. 2015 Supp. 8-1344(a)(2) and K.S.A. 2015 Supp. 8-1345(a). The charges were filed after it was determined that Mall wrecked his truck while DUI, which resulted in the death of his six-

year-old daughter. Mall was found guilty as charged after a bench trial was conducted on stipulated facts. Mall appeals his convictions, arguing (1) that the trial court erred in admitting evidence of his blood alcohol content because the blood test was a warrantless search and seizure unsupported by exigent circumstances and probable cause; (2) that the trial court erred in admitting evidence under K.S.A. 2016 Supp. 60-455 of his prior Colorado conviction for vehicular homicide; and (3) that the trial court erred in classifying his prior Colorado conviction as a person felony for the purpose of calculating his criminal history. Finding none of Mall's arguments persuasive, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2015, Mall made the fatal decision to drink alcohol and drive his truck. Unfortunately, Mall included his 6-year-old daughter, Madilyn, in that decision. After drinking nearly half of a bottle of whiskey and smoking some marijuana, Mall put Madilyn into his 2001 Ford Ranger and decided to drive. Mall sped down Tuttle Creek Boulevard in Manhattan, Kansas, weaving in and out of traffic and tailgating other drivers. Eventually, Mall's pickup truck swiped another car. Mall swerved to avoid the car, but he lost control of his truck. The truck left the road and slammed into a tree at an estimated 81 miles per hour. Madilyn suffered blunt traumatic injuries and had to be extricated from the pickup truck. Madilyn died at the scene of the crash. Mall was transported to a local hospital for treatment.

On November 13, 2015, Mall was charged with one count of second-degree murder under K.S.A. 2015 Supp. 21-5403(a)(2) for killing another human being unintentionally but in a reckless manner which manifested an extreme indifference to the value of human life, or, in the alternative, involuntary manslaughter while DUI under K.S.A. 2015 Supp. 21-5405(a)(3); one count of possession of a controlled substance (THC) under K.S.A. 2015 Supp. 21-5706(b)(3); one count of transportation of liquor in an open container under K.S.A. 8-1599; and one count of transporting a child without

2

proper child safety restraints under K.S.A. 2015 Supp. 8-1344(a)(2) and K.S.A. 2015 Supp. 8-1345(a).

On April 12, 2016, the State moved the trial court to admit evidence of Mall's record of prior driving offenses under K.S.A. 2016 Supp. 60-455. Specifically, the State moved the court to admit a prior conviction from Colorado for vehicular homicide and a prior conviction from Kansas for reckless driving. The State argued that Mall's prior convictions for driving offenses were admissible to prove that Mall was aware of the risks associated with DUI and driving recklessly.

On April 27, 2016, Mall filed a motion to suppress the results of a blood-alcohol test. The test was conducted after Mall was taken to the hospital, read an implied consent advisory, and refused to consent to the test. In his motion, Mall argued that the warrantless search and seizure of his blood was not supported by any exception to the warrant requirement of the Fourth Amendment to the United States Constitution. The State argued that the blood-alcohol test was supported by probable cause and exigent circumstances.

On May 31, 2016, the trial court ruled on the parties' pretrial motions. The trial court granted the State's motion to admit evidence of Mall's prior driving convictions under K.S.A. 2016 Supp. 60-455. The trial court ruled that the evidence was material and probative and that its probative value outweighed the likelihood of prejudice against Mall. The trial court denied Mall's motion to suppress the results of his blood-alcohol test. The trial court ruled that probable cause plus exigent circumstances excused the absence of a search warrant.

On August 12, 2016, Mall waived his right to a jury trial and entered into a stipulation of facts. Mall's attorney told the trial court that "the plan is to do a trial to the Court on agreed stipulated facts while preserving an ongoing objection to prior

3

rulings . . . by [the] District Court . . . and proceed in that manner." Thus, Mall's attorney moved the court to proceed to trial on the stipulated facts. Mall's attorney also indicated that the parties had agreed that the trial court "may consider the evidence, including the transcript from the Preliminary Hearing that was held in this matter, in rendering its decision." The case proceeded to a bench trial on the following stipulated facts:

"1.    On March 9th 2001 the defendant was driving east on Colorado Highway 34 from Estes Park and lost control of the vehicle he was driving. The vehicle skidded off the road and collided into a rock wall. The front seat passenger of the vehicle, Sarah Hanna Whalen, was ejected from the vehicle and killed. The opinion of the crash investigator was that the vehicle was traveling 59 m.p.h. in a 40 m.p.h. zone. The defendant admitted that he had been drinking alcohol and smoking marijuana prior the crash. The defendant was charged with vehicular homicide contrary to Colorado Revised Statute 18-3-106(1)(b) with the charging language as follows:

'On or about March 9, 2001, in the County of Larimer and State of Colorado, the defendant Joshua Michael Mall did unlawfully and feloniously operate and drive a motor vehicle while under the influence of alcohol and drugs and a combination of alcohol and drugs, which conduct was the proximate cause of death of Sarah Hanna Whalen.'

"The defendant pled guilty to the offense set forth above on June 11, 2001.

"2.    On November 30, 2011, Riley County Police Officer Miller observed a vehicle speeding at 92 mph in a 65 mph zone. He activated his emergency equipment and followed the truck. Officer Miller saw the vehicle brake and slide past Walnut Creek Road and into the north ditch. The vehicle then pulled through the ditches and turned north onto Walnut Creek and then stopped. Officer Miller made contact with the driver and identified him as Joshua Mall. Mall stated that he had a fight with his girlfriend and was trying to get home as quickly as possible. When Mall went into the ditch, he left long black skid marks and sprayed a large amount of gravel onto the roadway. The defendant was charged with reckless

4

driving contrary to K.S.A. 8-1566 and was convicted of this charge on January 3, 2012.

"3.     The defendant is the father of Madilyn Mall. Madilyn was born on September 1st, 2009. On October 5th, 2015, she was six (6) years, one (1) month and four (4) days old and stood 46 1/2 inches tall and weighed 59 pounds.

"4.     At approximately 2:00 p.m. on October 5th, 2015 the defendant, Joshua Michael Mall, purchased a one liter bottle of Kentucky Deluxe whiskey from the Riley Liquor Store in Riley, Kansas.

"5.     Between the hours of 2:00 p.m. and 6:45 p.m. on October 5th, 2015 the defendant drank from the whiskey he had purchased to such an extent that by 6:45 p.m. he had consumed over half of the whiskey in the bottle.

"6.     At approximately 6:45 p.m. on October 5th, 2015 the defendant got into his 2001 Ford Ranger pickup. He allowed Madilyn Mall to get into the pickup.

"7.     Although the law required Madilyn by restrained in a booster seat and . . . despite the fact that a booster seat was readily available for use, the defendant made a choice to drive the vehicle while Madilyn was restrained only by a shoulder and lap belt.

"8.     The defendant drove the pickup northbound on Tuttle Creek Blvd. in Manhattan, Riley County, Kansas.

"9.     While on Tuttle Creek Blvd. the defendant drove in a very aggressive manner by speeding in and out of traffic. He tailgated other vehicles and swerved in an[d] out of traffic. He did not use any turn signals. Despite the fact that it was raining the defendant exceeded the speed limit on that portion of Tuttle Creek which was 55 m.p.h.

"10.    The manner in which the defendant was driving his pickup on Tuttle Creek Blvd. was reckless and done under circumstances that showed extreme indifference to human life.

"11.    While driving in this manner, and because of the prior driving incidents reflected in paragraphs 1 and 2, the defendant knew:

        a.   The manner in which he was driving created a substantial and unjustifiable risk that he could wreck and that Madilyn could be seriously injured or killed.

5

b.  The manner in which he was driving was a gross deviation from the standard of care that a reasonable person would use in the same situation.

c.  He was driving in such a reckless manner that it showed an extreme indifference to the value of human life.

"12.  Despite all the knowledge set out in the paragraph above, the defendant consciously, and without any justifiable reason, disregarded the same and continued to drive in the manner described above.

"13.  That while driving on Tuttle Creek Blvd. in the manner described above the defendant nearly crashed into the back of a vehicle in front of him that was driving in the same lane and in the same direction. The defendant swerved and rapidly accelerated his vehicle in an effort to go around this vehicle and in doing so clipped the side of the vehicle and lost control over his pickup. His pickup the [began] to skid. It went into a ditch and crashed into a tree.

"14.  The 2001 Ford Pickup had no mechanical defects that contributed to the wreck.

"15.  The wreck killed Madilyn Mall who dies as the result of a broken neck and head trauma.

"16.  That a subsequent investigation by the Kansas Highway Patrol determined that speed was a factor in the wreck and that in the opinion of the investigating officer, based on his training and experience, the defendant was driving in excess of 81 m.p.h. when he lost control of his pickup.

"17.  The defendant killed Madilyn Mall unintentionally but recklessly under circumstances that showed an extreme indifference to the value of human life.

"18.  That this act occurred on or about 5th day of October, 2015 in Riley County, Kansas.

"19.  That after the wreck, and prior to the arrival of law enforcement, the defendant made a request of several by-standers to help him leave the scene.

"20.  The defendant was transported from the wreck scene by E.M.S. and transported to the hospital. He was under constant supervision and consumed no drugs or alcohol after the wreck and prior to the subsequent blood draws.

"21.  Within two (2) hours from the time the defendant wrecked his pickup truck two blood draws were taken from his body. Both blood draws were taken by an individual who is licensed and qualified to take blood. Both blood draws were done pursuant to established medical protocol. The first blood draw was done as

6

part of the normal routine of treating the defendant. The second blood draw was done at the request of a member of the Riley County Police Department.

"22.  Both blood draws were submitted to the K.B.I. for testing. The results of the blood draws established the following:

   a.  First blood draw: The ethyl alcohol concentration in the defendant's blood was .16 grams per 100 milliliters of blood.

   b.  Second blood draw: The ethyl alcohol concentration in the defendant's blood was .13 grams per 100 milliliters of blood.

"23.  The K.B.I. testing was done properly and the blood results are accurate.

"24.  That inside the pickup truck at the time of the wreck was an open container of alcoholic beverage: the bottle of Kentucky Deluxe whiskey the defendant had purchased earlier in the day. The bottle was over half empty. The defendant had placed the bottle in the vehicle and knew it was in the vehicle when he drove it. The bottle was not in a locker compartment and was accessible to the defendant as he drove.

"25.  That inside the pickup truck at the time of the wreck was a small quantity of marijuana. The defendant had placed the marijuana in the vehicle earlier and knew it was in the vehicle when he was driving."

Both parties waived opening arguments at the trial. The State offered as evidence the stipulated facts, the preliminary hearing transcript, and the exhibits admitted at the preliminary hearing. Mall's attorney told the trial court that he would "like to preserve a continuous objection to any evidence subject to prior rulings by the district court." Mall's attorney was no doubt specifically objecting to the trial court's granting of the State's motion to introduce K.S.A. 60-455 evidence and the denial of his motion to suppress the results of the blood-alcohol test.

After considering the stipulated facts, the trial court found Mall guilty of murder in the second degree; guilty of the alternative count of involuntary manslaughter while DUI; guilty possession of THC; guilty of transportation of liquor in an open container; and guilty of transporting a child without proper child safety restraints. Mall was sentenced to

205 months' imprisonment with 36 months' postrelease supervision. He filed a timely notice of appeal.

### WAS THE WARRANTLESS BLOOD DRAW SUPPORTED BY EXIGENT CIRCUMSTANCES AND PROBABLE CAUSE?

Mall filed a pretrial motion to suppress the toxicology results of a warrantless blood draw conducted by hospital employees at the direction of law enforcement. That motion was denied after the trial court ruled that the warrantless blood draw was justified by the existence of exigent circumstances and probable cause—specifically the officer's reasonable belief that Mall was about to be transported to a hospital in Topeka and the presence of bottles of alcohol at the scene of the crash and Mall's physical manifestations of being under the influence. Mall appeals from that ruling, arguing that the blood draw was a warrantless search and seizure that was not supported by any exception to the warrant requirement found in the Fourth Amendment to the United States Constitution.

When the material facts underlying a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress the evidence is a question of law over which an appellate court has unlimited review. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016). Here, as the trial court noted in its written decision, the facts underlying the motion to suppress were undisputed. Accordingly, this court should exercise unlimited review over the question of whether the evidence should have been suppressed.

Mall appeals from the district court's ruling regarding the blood draw law enforcement directed be done. However, the record on appeal reflects that there was additional evidence of Mall's blood toxicology. When Mall was transported from the scene of the crash to the hospital for treatment, the hospital took a sample of his blood as part of routine medical procedures. Law enforcement had no involvement in that blood

8

sample being taken. Eventually, the Riley County Police Department obtained the hospital's blood sample after securing a search warrant. The hospital's blood sample was sent to the Kansas Bureau of Investigation (KBI) for a toxicology screening. That blood sample was separate from the one that Mall challenged in his motion to suppress. Before trial, Mall stipulated that:

"21.    Within two (2) hours from the time the defendant wrecked his pickup truck two blood draws were taken from his body. Both blood draws were taken by an individual who is licensed and qualified to take blood. Both blood draws were done pursuant to established medical protocol. The first blood draw was done as part of the normal routine of treating the defendant. The second blood draw was done at the request of a member of the Riley County Police Department.

"22.    Both blood draws were submitted to the K.B.I. for testing. The results of the blood draws established the following:
a.    First blood draw: The ethyl alcohol concentration in the defendant's blood was .16 grams per 100 milliliters of blood.
b.    Second blood draw: The ethyl alcohol concentration in the defendant's blood was .13 grams per 100 milliliters of blood.

"23.    The K.B.I. testing was done properly and the blood results are accurate."

Mall did not challenge the admission of the hospital's blood draw into evidence at trial, nor does he challenge it on appeal. In fact, Mall fails to address the existence of the second blood draw. An issue that is not briefed on appeal is deemed waived or abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016). Despite Mall's failure to brief the issue, it must be determined whether the existence of the second blood draw has any effect on this issue.

The State argues that "even if the police blood draw [subject to the motion to suppress] had [been] suppressed, the trial court still had evidence of the uncontested hospital blood draw to establish the defendant's blood alcohol level." The State is arguing that any error was harmless in light of the additional evidence of Mall's blood alcohol

9

concentration. Mall is arguing that his constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution has been violated.

"A constitutional error may only be declared harmless when the party benefitting from the error proves beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. [Citation omitted.]" *State v. James*, 301 Kan. 898, 910, 349 P.3d 457 (2015). Because the party benefitting from the alleged error here is the State, Mall's failure to address the existence of the hospital's blood draw does not mean the State's harmless error argument succeeds by default. It is still the State's burden to prove beyond a reasonable doubt that the error did not affect the outcome of the trial.

Without determining whether the warrantless blood draw violated Mall's Fourth Amendment right against unreasonable search and seizure and presuming that it did so, the question that must be answered is whether that error was harmless. Simply put, because Mall stipulated to the existence and results of the hospital's blood draw, and because that blood draw actually showed a higher blood alcohol content than the impermissible blood draw, it is clear that the admission of the warrantless draw was harmless. In light of the entire record, it is clear that even if the warrantless blood draw had been suppressed, it would have had no effect on the outcome of Mall's trial.

The existence of the hospital's blood draw, which the State obtained by way of a valid search warrant, conclusively shows that the warrantless blood draw did not affect the outcome of the trial. Accordingly, we will not address the issue of whether the trial court erred in denying Mall's motion to suppress the same.

DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE UNDER K.S.A. 2016 SUPP. 60-455 OF MALL'S PRIOR COLORADO CONVICTION FOR VEHICULAR HOMICIDE?

Mall argues that the trial court erred in admitting his prior Colorado conviction for vehicular homicide. Specifically, Mall argues that "the State manufactured the necessity of admitting the prior when it charged Mr. Mall with Murder in the Second Degree, rather than Involuntary Manslaughter." The State argues that the trial court properly admitted the evidence "because it fairly provides insight into the awareness the defendant had of the consequences of his driving."

K.S.A. 2016 Supp. 60-455 governs the admissibility of evidence of a person's prior crimes or civil wrongs. K.S.A. 2016 Supp. 60-455(a) specifically states that "evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit a crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." More commonly stated, evidence of a person's past crimes or civil wrongs cannot generally be used to show that the person has a propensity for committing other bad acts.

Evidence of a person's past crime is admissible, however, "when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2016 Supp. 60-455(b). Additionally, the evidence may be admitted "to show the modus operandi or general method used by a defendant to perpetrate similar but totally unrelated crimes when the method of committing the prior acts is so similar to that utilized in the current case . . . that it is reasonable to conclude the same individual committed both acts." K.S.A. 2016 Supp. 60-455(c). The list of material facts found in K.S.A. 2016 Supp. 60-455 is not exclusive. A party may seek to admit evidence to prove some material fact not

11

specifically enumerated in the statute. *State v. McCune*, 299 Kan. 1216, 1226-27, 330 P.3d 1107 (2014).

Trial courts must utilize a three-step test in determining whether evidence should be admitted under K.S.A. 2016 Supp. 60-455. Each step of the test has its own appellate standard of review. Our Supreme Court has summarized the test as follows:

> "First, the district court must determine whether the fact to be proven is material, meaning that this fact has some real bearing on the decision in the case. The appellate court reviews this determination independently, without any required deference to the district court.
> "Second, the district court must determine whether the material fact is disputed and, if so, whether the evidence is relevant to prove the disputed material fact. In making this determination, the district court considers whether the evidence has any tendency in reason to prove the disputed material fact. The appellate court reviews this determination only for abuse of discretion.
> "Third, if the fact to be proven was material and the evidence was relevant to prove a disputed material fact, then the district court must determine whether the probative value of the evidence outweighs the potential for undue prejudice against the defendant. The appellate court also reviews this determination only for abuse of discretion." *State v. Torres*, 294 Kan. 135, 139-40, 273 P.3d 729 (2012).

A trial court abuses its discretion (1) if no reasonable person would take the view adopted by the trial court; (2) if its action is based on an error of law; or (3) if its action is based on an error of fact. *State v. Seacat*, 303 Kan. 622, 634-35, 366 P.3d 208 (2016).

*Materiality*

The panel must first determine whether the evidence subject to K.S.A. 2016 Supp. 60-455 was offered to support a material fact. This court reviews that question de novo

12

without any deference to the findings of the trial court. A material fact is one that has some real bearing on the outcome of the case. *Torres*, 294 Kan. at 139.

The State argues that Mall's prior Colorado conviction for vehicular homicide "is material . . . because it helps prove the defendant's awareness and conscious disregard of his behavior's risks." The State's argument is based on the language of the statute that Mall was charged under—K.S.A. 2015 Supp. 21-5403(a)(2)—which states that "[m]urder in the second degree is the killing of a human being committed . . . unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." Thus, the State argues that "the facts concerning the defendant's awareness of risk and conscious disregard of the same are part of the State's required proof, not merely collateral issues having no genuine bearing on the outcome."

Under K.S.A. 2015 Supp. 21-5403(a)(2), the State was required to prove that Mall acted "recklessly under circumstances manifesting extreme indifference to the value of human life." To show that Mall acted "recklessly," the State was required to show that he "consciously disregard[ed] a substantial and unjustifiable risk that circumstances exist[ed] or that a result w[ould] follow, and such disregard constitute[d] a gross deviation from the standard of care which a reasonable person would [have] exercise[d] in the situation." K.S.A. 2015 Supp. 21-5202(j).

For support of its argument, the State points to the case of *State v. Doub*, 32 Kan. App. 2d 1087, 95 P.3d 116 (2004). In *Doub*, a panel from this court analyzed whether sufficient evidence existed to support a conviction for second-degree "depraved heart" murder—"'killing of a human being committed . . . unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life.'" 32 Kan. App. 2d at 1089 (quoting K.S.A. 2003 Supp. 21-3402, a previous version of K.S.A. 2015 Supp. 21-5403[a][2]). The defendant, Doub, was convicted of that crime after he drove his pickup truck into the back of a car while he was intoxicated, pushing the car off the

13

road and into a tree. Doub killed a nine-year-old passenger who was riding in the backseat of the car that he ran into. On appeal, Doub argued that the evidence was insufficient to establish the requisite state of mind—reckless extreme indifference to the value of human life.

This court held that "[t]he required state of mind for depraved heart murder can be attributed to the driver of an automobile in a fatal collision." 32 Kan. App. 2d 1087, Syl. ¶ 4. The *Doub* court acknowledged that no precise or universal definition of the state of mind required under second-degree depraved heart murder existed. Thus, a panel of this court identified eight factors that would be relevant in determining whether a defendant who killed someone while driving had the requisite state of mind to support a conviction for second-degree depraved heart murder. Among those factors, and particularly important to Mall's case, the *Doub* court listed the following:

> "'8.      *Prior record of driving offenses* (*drunk or reckless driving or both*). The relevance of a defendant's prior record for reckless or intoxicated driving is, as *United States v. Fleming*[, 739 F.2d 945, 949 (4th Cir. 1984),] pointed out, not to show a propensity to drive while drunk but 'to establish that defendant had grounds to be aware of the risk his drinking and driving while intoxicated presented to others.' [Citation omitted.]" 32 Kan. App. 2d at 1092.

Mall argues that the State's reliance on *Doub* is misplaced. Doub's appeal is not directly on point compared to Mall's case. The *Doub* court reviewed the sufficiency of the evidence supporting Doub's conviction and not the admissibility of evidence under K.S.A. 60-455. The *Doub* court did not actually analyze Doub's prior record of driving offenses which likely explains the absence of a K.S.A. 60-455 analysis.

Regardless, *Doub* does provide insight as to the issue of determining materiality and relevancy under our current K.S.A. 60-455 analysis. This court clearly held in *Doub* that evidence of a criminal defendant's prior driving history—particularly the defendant's

14

history of drunk or reckless driving—can be a relevant and useful factor in determining whether the defendant had the requisite state of mind to be convicted of second-degree depraved heart murder. 32 Kan. App. 2d at 1092. Based on the statute identifying the essential elements of that same charge, it is obvious that recklessness—conscious disregard of a substantial risk—is material to prosecutions under that same statute, as is the extreme indifference to the value of human life. See K.S.A. 2015 Supp. 21-5403(a)(2).

Here the State was required to show that Mall killed Madilyn "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 2015 Supp. 21-5403(a)(2). *Doub* expressly states that a criminal defendant's prior driving record can be used "not to show a propensity to drive while drunk but 'to establish that defendant had grounds to be aware of the risk his drinking and driving while intoxicated presented to others.' [Citation omitted.]" 32 Kan. App. 2d at 1092. For that reason, *Doub* should not be dismissed as Mall suggests. It stands in support of the State's contention that Mall's prior Colorado conviction for vehicular homicide "is material . . . because it helps prove the defendant's awareness and conscious disregard of his behavior's risks."

The fact to be proven—that Mall killed Madilyn "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life"—was material. That fact, which is in actuality an element of the crime with which Mall was charged, certainly had a bearing on the outcome of Mall's case.

*Dispute and Relevancy*

Next, a determination must be made whether the material fact is in dispute. If the fact is in dispute, it must then be determined whether the evidence is relevant. *Torres*, 294 Kan. at 139-40. Evidence is relevant if it has "any tendency in reason to prove any

15

material fact." K.S.A. 60-401(b). The trial court ruled that the evidence offered was relevant to prove a material fact in dispute. We review the trial court's decision relating to this step for an abuse of discretion. *Torres*, 294 Kan. at 140.

Mall argues that "[t]he material fact that drinking and driving is dangerous is not in dispute and therefore, not material for a trier of fact to consider." Mall specifically argues that "there was no contention made that drinking while driving was not dangerous. . . . Therefore, allowing the Colorado prior to show that drinking and driving presented a known risk and a disregard for that risk is unnecessary and needlessly cumulative." The State, on the hand, argues that the material fact—that Mall killed Madilyn "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life"—was in dispute because Mall pled not guilty.

Mall argues that *State v. Boggs*, 287 Kan. 298, 197 P.3d 441 (2008), supports his position that the material fact was not in dispute. *Boggs* was "a criminal case involving the nonexclusive possession of marijuana and drug paraphernalia. Over the defendant's objection, the district court admitted evidence of the defendant's prior crime of possession of marijuana." 287 Kan. at 300. A panel from this court held that the admission of the prior crime evidence violated K.S.A. 60-455. 287 Kan. at 300. The State appealed.

On appeal, the defendant, Boggs, argued that the "evidence of his prior marijuana use was not relevant to any material fact in question because his defense consisted of a denial that he ever had possession of the [drug paraphernalia] and, by extension, the marijuana residue." 287 Kan. at 305. Boggs argued that the evidence of his prior crime "only served to demonstrate a propensity toward drug use[.]" 287 Kan. at 305.

The court noted that "[a]lthough intent is an element of both possession of marijuana and possession of drug paraphernalia, it does not necessarily follow that evidence of intent is always *material* in a particular case." 287 Kan. at 311. Indeed, "'[i]f

16

the fact is obvious from the mere doing of the act, or if the fact is conceded, evidence of other crimes to prove that fact should not be admitted because it serves no purpose to justify whatever prejudice it creates.' [Citation omitted.]" 287 Kan. at 311. The court added that "when a defendant does not assert that his or her actions were innocent but rather presents some other defense, there is no reason to admit evidence of other crimes or civil wrongs to prove intent." 287 Kan. at 314 (citing *State v. Dotson*, 256 Kan. 406, 413, 886 P.2d 356 [1994]).

Because Boggs did not assert that his actions were innocent, and instead completely denied ever having possession of the paraphernalia at all, the Supreme Court held that his intent was never in dispute. Accordingly, the court affirmed this court's decision that the evidence of Boggs' prior crime violated K.S.A. 60-455. 287 Kan. at 315-16.

Mall argues that his case is analogous to *Boggs*. He argues that just like the intent issue was not in dispute in *Boggs*, his knowledge of the dangers of drinking and driving was not in dispute here. Thus, Mall argues that because his knowledge was not in dispute it was not material, and his prior conviction should not have been admitted under K.S.A. 60-455. Mall's argument is built on the incorrect assumption that his knowledge—the material fact supported by the contested evidence—was not in dispute.

It is the role of the factfinder in reaching a decision in any case to apply the law to the facts presented. "A plea of not guilty places all issues in dispute, including even things most patently true. However strong the State's case may be, the jury has the power to accept it, reject it, or find it sufficiently persuasive." *State v. Finch*, 291 Kan. 665, 673, 244 P.3d 673 (2011). Accordingly, when Mall pled not guilty, he placed the material fact that he killed Madilyn "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life" in dispute.

17

Because the material fact is in dispute, it must be determined whether the evidence is relevant. Again, evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). Relevancy has two elements: materiality and probativity. It has been established that the evidence is material. Now, it must be determined whether the evidence is probative. "'Evidence is probative if it furnishes, establishes, or contributes toward proof.'" *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016).

It should be noted that Mall oversimplifies the material fact at issue. Based on our discussion of what the State was required to prove in order to secure a conviction for unintentional second-degree murder, we know that the prior conviction was not simply offered to show that "drinking and driving is dangerous." Instead, the prior conviction was offered to show that Mall acted "recklessly under circumstances manifesting extreme indifference to the value of human life." See K.S.A. 2015 Supp. 21-5403(a)(2). Based on the definition of "reckless" from K.S.A. 2015 Supp. 21-5202(j), the prior conviction was specifically offered to show that Mall had knowledge of, and disregarded, the possible results of drinking and driving—another human being's death. Thus, Mall's argument that the National Highway Traffic Safety Administration's advertising campaigns regarding the dangers of drunk driving make it so that no reasonable juror would deny that drinking and driving is dangerous is not persuasive. The State did not offer the prior conviction to show the public's collective knowledge on the dangers of drinking and driving. The State offered the prior conviction to specifically show *Mall's* knowledge on the dangers of drinking and driving.

Regardless, it must be determined whether the evidence offered is relevant to prove the material fact in dispute. The *Doub* court held that a criminal defendant's prior driving record can be used to prove the requisite mental state for a conviction of unintentional second-degree murder committed during intoxicated driving. Specifically, the *Doub* court held that a defendant's prior driving record can be relevant "'to establish

18

that defendant had grounds to be aware of the risk his drinking and driving while intoxicated presented to others.'" 32 Kan. App. 2d at 1092.

Here, the State offered evidence of Mall's prior Colorado conviction for the exact reason identified in *Doub*. But, because the issue in *Doub* was sufficiency of the evidence and not the admissibility of K.S.A. 60-455 evidence, it must still be determined whether the evidence is relevant under the specific facts of Mall's case. While *Doub* certainly carries weight in making that determination, it is important that Mall's prior conviction is sufficiently factually similar to his current crime. In fact, the two crimes are nearly identical. In both cases, Mall (1) consumed alcohol in excess; (2) decided to drive a vehicle while intoxicated; (3) allowed or directed a passenger to ride in his vehicle; (4) drove over the speed limit; (5) wrecked his vehicle; and (6) killed the passenger riding with him. Even without *Doub*, those factual similarities show that the evidence of his prior conviction is relevant. With *Doub*, those factual similarities show that the evidence of his prior conviction is most definitely relevant.

Accordingly, the evidence is relevant to prove the material fact—that Mall killed Madilyn "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." The trial court did not abuse its discretion in ruling that the evidence was relevant to a disputed material fact.

*Probativity vs. Potential for Undue Prejudice*

Because we have determined that the fact to be proven was material and the evidence was relevant to prove a disputed material fact, we must determine whether the probative value of the evidence outweighs the risk for undue prejudice. *Torres*, 294 Kan. at 140. The trial court ruled that the probative value of the evidence outweighed the risk for undue prejudice. In making its ruling, the trial court relied on the holdings from *Doub* and the fact that a limiting instruction would accompany the evidence. We review the

19

trial court's decision relating to this step for an abuse of discretion. *Torres*, 294 Kan. at 140.

"'Evidence is probative if it furnishes, establishes, or contributes toward proof.' [Citation omitted.]" *McCormick*, 305 Kan. at 47. The trial court ruled that the evidence was probative based on the holdings from *Doub*. It has been established that the evidence of Mall's prior Colorado conviction is probative to prove that he killed Madilyn "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 2015 Supp. 21-5403(a)(2). Accordingly, the trial court did not abuse its discretion in ruling that the evidence was probative.

Still, it must be determined whether the trial court abused its discretion in weighing the probative value of the evidence against the risk for undue prejudice. "Evidence of other crimes or civil wrongs is unduly prejudicial when it 'actually or probably brings about the wrong result under the circumstances of the case.' [Citations omitted.]" *State v. Lawrence*, No. 106,207, 2013 WL 2321032, *7 (Kan. App. 2013) (unpublished opinion). Our Supreme Court has acknowledged the following risks of admitting evidence under K.S.A. 60-455:

> "'. . . First, a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed. . . .'" *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 (1973).

Mall argues that "the State manufactured the need to bring in K.S.A. 60-455 evidence to prove the 'reckless' element" by charging him with unintentional second-degree murder under K.S.A. 2015 Supp. 21-5403(a)(2) and not involuntary manslaughter

while DUI under K.S.A. 2015 Supp. 21-5405(a)(3) ("Involuntary manslaughter is the killing of a human being committed . . . in the commission of, or attempt to commit, or flight from an act described in K.S.A. 8-1567, and amendments thereto."). Mall was charged with involuntary manslaughter while DUI in the alternative to the charge of unintentional second-degree murder.

Mall contends that the State's decision to charge the more severe crime "flies in the face of what K.S.A. 60-455 was intended to do." Mall further argues that allowing the State to admit his prior conviction will set a bad example for future cases. He argues that "it will always be in the best interest of the prosecutor to charge a higher level crime requiring a showing of 'intent' or 'recklessness,' even though the specific facts of the case may not warrant that heightened charge."

Mall's assertions miss the mark. Mall focuses his argument on whether the State was correct to charge unintentional second-degree murder and not vehicular homicide. The State's decision on which crimes to charge is an issue separate from the admission of evidence under K.S.A. 2016 Supp. 60-455.

The prosecutor in a criminal case has discretion to charge whatever crimes are supported by the facts. *State v. McClanahan*, 251 Kan. 533, 538, 836 P.2d 1164 (1992) (citing *State v. Pruett*, 213 Kan. 41, Syl. ¶ 1, 515 P.2d 1051 [1973]). That discretion, however, does not go unchecked. Every Kansan charged with a felony has a right to a preliminary examination. K.S.A. 2015 Supp. 22-2902(1). The purpose of the preliminary examination is to determine whether "there is probable cause to believe that a felony has been committed by the defendant." K.S.A. 2015 Supp. 22-2902(3). If the evidence presented at the preliminary examination does not support a finding of probable cause, the judge conducting the examination "shall discharge the defendant." K.S.A. 2015 Supp. 22-2902(3).

21

Those two rules show that a prosecutor would not always be free to charge a higher level crime. It would be an abuse of prosecutorial discretion to charge a crime that was not supported by the facts of the case. Moreover, a charge that was not supported by the facts of the case would also have to clear the preliminary examination's probable cause hurdle, which would be unlikely without sufficient factual support. Finally, even if the higher crime was charged, and probable cause was found, the State would still be required to prove the crime beyond a reasonable doubt.

Most importantly, the State's decision to charge a higher level crime has no real bearing on a court's independent K.S.A. 60-455 analysis. Simply charging a higher level crime does not make it any more or less likely that evidence would be admitted or excluded under K.S.A. 2016 Supp. 60-455. No matter what crime is charged, the trial court must complete the same analysis that the trial court conducted here. Mall's argument is not persuasive to show that the evidence of his prior Colorado conviction is unduly prejudicial. Instead, his argument is based on the contention that the prosecutor abused his discretion in charging him. That is not the issue to be addressed in this case. Accordingly, Mall's argument, as it relates to his charges, does not support his assertion that the evidence was unduly prejudicial.

While this court has not examined the admission of prior crimes evidence to prove knowledge in the context of an unintentional second-degree murder charge for DUI, prior crimes evidence has been allowed to prove the element of recklessness in another context. In *Lawrence*, a panel from this court reviewed a trial court's decision to admit evidence of the defendant's prior crimes under the knowledge exception in K.S.A. 60-455. The defendant, Lawrence, was charged with reckless involuntary manslaughter after an 18-month-old child died while in her care. The State admitted evidence of Lawrence's prior crimes for child care capacity violations under the knowledge exception in K.S.A. 60-455.

On appeal, the "State argued that the K.S.A. 60-455 evidence of prior citations for exceeding capacity showed Lawrence's knowledge that having in excess of six children in her care constituted a risk which Lawrence disregarded, leading to [the child's] death." 2013 WL 2321032, at *6. This court accepted the State's rationale and held that the evidence had a legitimate and effective bearing on the outcome of the case. This court held that the evidence was admissible and that its probative value outweighed any risk for undue prejudice. In reaching that holding, the court relied on the existence of a limiting instruction. 2013 WL 2321032, at *7.

While Mall's trial was submitted to the bench on stipulated facts, the trial court recognized that the use of the evidence was limited. A trial court is presumed to know the law and to follow any instructions it would have given to a jury. *State v. Johnson*, 258 Kan. 61, 65, 899 P.2d 1050 (1995). In the order granting admission of Mall's prior Colorado conviction, the trial court stated that "[a] limiting instruction must be given, directing that the jury may consider this evidence solely for the purpose of deciding whether the state has borne its burden of proof to show Defendant acted recklessly under 'circumstances manifesting extreme indifference to the value of  human life.'"

The probative value of Mall's prior Colorado conviction for vehicular homicide is substantial. *Doub* indicates that this type of evidence can be relevant to prove knowledge of risk under a prosecution for second-degree murder resulting from a car wreck. The facts of Mall's prior conviction are sufficiently similar to the facts of the current case. The similarity of the facts only serves to increase the evidence's relevancy and, thus, its probative value. For those reasons, Mall's prior conviction is highly probative. Furthermore, because the trial court was aware of the limited purpose the evidence could be used for, and because Mall was tried by the bench, the potential for undue prejudice was low. In light of the evidence's probative value, Mall has failed to carry his burden of demonstrating that the trial court abused its discretion in ruling that the probative value of the evidence outweighed the potential for undue prejudice.

DID THE TRIAL COURT ERR IN CLASSIFYING MALL'S PRIOR COLORADO CONVICTION AS A PERSON FELONY FOR THE PURPOSE OF CALCULATING CRIMINAL HISTORY?

At Mall's sentencing hearing, the trial court considered whether his prior Colorado conviction for vehicular homicide should have been classified as a person or nonperson felony for the purpose of calculating Mall's criminal history score. At the hearing, Mall objected to his criminal history score, arguing that the prior Colorado conviction could not be scored as a person felony because it was not identical to or narrower than the comparable Kansas statute. Mall specifically argued that the definition of DUI in Colorado was broader than the definition of DUI in Kansas. He argued that his criminal history score should be G. The State argued that the two statutes were identical and, thus, the prior conviction should be classified as a person felony for the purpose of scoring Mall's criminal history. The trial court ruled that the two statutes were identical. Accordingly, the trial court overruled Mall's objection to his criminal history score and found that he had a score of C.

"Whether a prior conviction or adjudication was properly classified as a person or nonperson crime for criminal history purposes raises a question of law subject to unlimited review." *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015). Under K.S.A. 2016 Supp. 21-6811(e), prior out-of-state convictions are used to calculate a defendant's criminal history score. If the court uses a prior conviction, the out-of-state crime is first classified as either a felony or misdemeanor depending on its classification in the convicting jurisdiction. If the out-of-state conviction is a felony in that jurisdiction, it will also be counted as a felony in Kansas. The same goes for misdemeanors. K.S.A. 2016 Supp. 21-6811(e). Finally, the court must classify the prior conviction as either a person or nonperson crime. In making that classification, the court refers to "comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed." K.S.A. 2016 Supp. 21-6811(e)(3). "If the state of Kansas does not have a comparable offense in effect on the date the current crime of conviction

was committed, the out-of-state conviction shall be classified as a nonperson crime." K.S.A. 2016 Supp. 21-6811(e)(3).

In determining whether a prior offense may be used as a person felony for the purpose of calculating a defendant's criminal history score, the trial court is constitutionally prohibited under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Descamps v. United States*, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), from making additional factual findings beyond identifying the statutory elements of the primary offense. *Dickey*, 301 Kan. at 1039.

Mall was convicted of vehicular homicide in Colorado in 2001 under Colo. Rev. Stat. § 18-3-106(1)(b)(I) (2001), which stated: "If a person operates or drives a motor vehicle while under the influence of alcohol or one or more drugs, or a combination of both alcohol and one or more drugs, and such conduct is the proximate cause of the death of another, such person commits vehicular homicide." The statute defined "driving under the influence" as

> "driving a vehicle when a person has consumed alcohol or one or more drugs, or a combination of alcohol and one or more drugs, which . . . affect such person to a degree that such person is substantially incapable, either mentally or physically, or both mentally and physically, of exercising clear judgment, sufficient physical control, or due care in the safe operation of a vehicle." Colo. Rev. Stat. § 18-3-106(1)(b)(IV) (2001).

In 2001, a conviction for vehicular homicide under Colo. Rev. Stat. § 18-3-106(1)(b) (2001) was classified as a class 3 felony. Colo. Rev. Stat. § 18-3-106(1)(c) (2001).

Mall acknowledges that the comparable Kansas offense is involuntary manslaughter while DUI. The involuntary manslaughter statute in place when Mall committed his current offense can be found at K.S.A. 2015 Supp. 21-5405(a)(3). That statute reads: "Involuntary manslaughter is the killing of a human being committed . . . in

25

the commission of, or attempt to commit, or flight from an act described in K.S.A. 8-1567, and amendments thereto." K.S.A. 2015 Supp. 21-5405(a)(3). Thus, turning to K.S.A. 2015 Supp. 8-1567(a) to find what acts constitute driving under the influence, we see:

"(a) Driving under the influence is operating or attempting to operate any vehicle within this state while:

(1) The alcohol concentration in the person's blood or breath as shown by any competent evidence, including other competent evidence, as defined in paragraph (1) of subsection (f) of K.S.A. 8-1013, and amendments thereto, is .08 or more;

(2) the alcohol concentration in the person's blood or breath, as measured within three hours of the time of operating or attempting to operate a vehicle, is .08 or more;

(3) under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle;

(4) under the influence of any drug or combination of drugs to a degree that renders the person incapable of safely driving a vehicle; or

(5) under the influence of a combination of alcohol and any drug or drugs to a degree that renders the person incapable of safely driving a vehicle."

On appeal, Mall presents the same arguments that he presented to the trial court. He argues that the trial court erred in calculating his criminal history score because it incorrectly scored his prior Colorado conviction for vehicular homicide as a person felony. He contends that the prior crime was not identical to or narrower than the comparable Kansas crime. Mall specifically argues that the Colorado crime is more broad because the Kansas statute defines DUI as when a person is ". . . *incapable* of safely driving a vehicle" and the Colorado statute defines DUI as when a person is ". . . *substantially incapable* . . . of exercising due care in the operation of a vehicle." (Emphasis added.) K.S.A. 2015 Supp. 8-1567; Colo. Rev. Stat. § 18-3-106(1)(b)(IV) (2001). Thus, Mall asserts that in "Colorado at the date of the offense, it was easier to prove vehicular homicide than it would be to prove involuntary manslaughter under the comparable Kansas statute at the date of sentencing[.]"

Mall points to the case of *State v. Stanley*, 53 Kan. App. 2d 698, 390 P.3d 40 (2016), *rev. denied* August 31, 2016, to support his argument that the Colorado statute is broader than the Kansas statute. In *Stanley*, a panel from this court compared K.S.A. 2012 Supp. 8-1567 to the Missouri DUI statute. The court compared the two statutes in an effort to determine whether the trial court had properly classified the defendant's prior Missouri conviction as a prior conviction under K.S.A. 2012 Supp. 8-1567(i) for the purpose of determining whether his current conviction was his first, second, third, fourth, or subsequent DUI conviction under K.S.A. 2012 Supp. 8-1567(b)(1).

On appeal, the court found that "[w]hile the . . . Missouri statute criminalizes some of the same conduct that the Kansas statute criminalizes, it is clearly conceivable that an act that would be considered [DUI] in Missouri would not be DUI in Kansas." 2016 WL 1274465, at *4. In making that finding, the court relied on the language of the two statutes at issue. The court found that the Kansas statute's requirement that the person be under the influence of alcohol "'to a degree that renders the person incapable of safely driving a vehicle'" was "more stringent than the Missouri requirement of intoxication that in '"any manner impairs the ability of a person to operate an automobile."'" [Citation omitted.]" 2016 WL 1274465, at *3. Accordingly, the court held that the trial court had improperly considered the defendant's prior conviction in determining his number of prior DUI convictions under K.S.A. 2012 Supp. 8-1567(b)(1). 2016 WL 1274465, at *4.

Mall's analysis of the current issue would be more persuasive were we examining whether a hypothetical prior Colorado conviction for DUI could be used as a prior conviction for DUI under K.S.A. 2015 Supp. 8-1567(b)(1) to enhance Mall's sentence which was the issue examined in *Stanley*. It would be more persuasive were we reviewing a claim that a trial court engaged in improper fact-finding. But we are not asked to answer that question. Instead, we must determine whether the trial court erred in classifying Mall's prior Colorado conviction for vehicular homicide as a person felony for the purpose of scoring his criminal history. Our analysis of the issue is guided by K.S.A.

27

2015 Supp. 21-6811(e)—not the sentencing provisions of K.S.A. 2015 Supp. 8-1567 and caselaw interpreting the same.

"In this legal review of criminal statutes, there is no review of the evidence surrounding the out-of-state conviction. Nor is there review of the identicalness of the elements of the crimes identified in the out-of-state and in-state statutes. Rather, the review is for crime comparability." *State v. Williams*, 299 Kan. 870, 875, 326 P.3d 1070 (2014) (citing *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 [2003]), *overruled on other grounds by Dickey*, 301 Kan. 1018. And when there is no judicial fact-finding, *Apprendi*, *Descamps*, and *Dickey* are not implicated. *State v. Coleman*, No. 115,293, 2017 WL 1104789, at *4 (Kan. App. 2017) (unpublished opinion). Those cases are not implicated because "[w]hen designating a prior out-of-state crime of conviction as person or nonperson offense in Kansas, 'the offenses need only be comparable, not identical.' [Citation omitted.]" *Williams*, 299 Kan. at 873. In *Vandervort*, our Supreme Court held that "the Kansas crime that was 'the closest approximation' of the out-of-state crime was a comparable offense, and . . . explicitly ruled the crimes need not have identical elements to be comparable for making the person or nonperson designation. [*Vandervort*, 276 Kan. at 179.]" *Williams*, 299 Kan. at 873.

In making the person or nonperson designation, the "essential question is whether the offenses are similar in nature and cover similar conduct." *State v. Martinez*, 50 Kan. App. 2d 1244, 1249, 338 P.3d 1236 (2014). In answering that essential question, our courts have consistently rejected the identical or narrower test that Mall relies on. See *Martinez*, 50 Kan. App. 2d at 1250 ("Martinez is basically arguing that the offenses must have identical elements, but as we have noted above, the [criminal history] statute does not require such exactitude."); *State v. Ohrt*, No. 114,516, 2016 WL 3856321, *6 (Kan. App. 2016) (unpublished opinion), *rev. denied* June 5, 2017 ("Under K.S.A. 2015 Supp. 21-6811[e], crimes need not have identical elements to be comparable for making the person or nonperson designation."); *State v. Dubry*, No. 114,050, 2016 WL 4498520, *5

(Kan. App. 2016) (unpublished opinion) ("[W]hen a Kansas court determines whether a prior out-of-state conviction is for a person offense, no factfinding is required—the court simply examines the relevant statutes and determines whether the crime is comparable to a Kansas offense or not. If so, and if the Kansas offense is a person crime, then the out-of-state conviction is for a person crime too.").

Here, a review of the Colorado and Kansas statutory language clearly indicates that the two statutes are comparable. Both statutes criminalize the act of killing another human being while driving under the influence of alcohol, drugs, or both. See Colo. Rev. Stat. § 18-3-106(b)(I); K.S.A. 2015 Supp. 21-5405(a)(3). Thus, the two statutes are sufficiently comparable under K.S.A. 2016 Supp. 21-6811(e)(3). Because the two statutes are comparable, and because K.S.A. 2015 Supp. 21-5405(a)(3) is a severity level 4 person felony, the trial court did not err in designating Mall's prior Colorado conviction for vehicular homicide as a person felony. Accordingly, Mall's criminal history was scored correctly.

Affirmed.